MARK E. REAGAN (State Bar No. 143438)
SCOTT J. KIEPEN (State Bar No. 175504)
KATHERINE R. MILLER (State Bar No. 247390)
**HOOPER, LUNDY & BOOKMAN, P.C.**
575 Market Street, Suite 2300
San Francisco, California 94105
Telephone: (415) 875-8500
Facsimile: (415) 875-8519
E-Mail:   mreagan@health-law.com
          skiepen@health-law.com
          kmiller@health-law.com

Attorneys for PLAINTIFFS

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| VALLEY VIEW HEALTH CARE INC. DBA RIVERBANK NURSING CENTER; THE STONEBROOK CONVALESCENT CENTER, INC. DBA STONEBROOK HEALTHCARE CENTER; LIFEHOUSE PARKVIEW OPERATIONS, LLC DBA PARKVIEW HEALTHCARE CENTER; BEVERLY HEALTHCARE - CALIFORNIA, INC. DBA GOLDEN LIVING CENTER-FRESNO; CF MODESTO, LLC DBA COUNTRY VILLA MODESTO NURSING & REHABILITATION CENTER; AVALON CARE CENTER – MERCED FRANCISCAN, L.L.C. DBA FRANCISCAN CONVALESCENT HOSPITAL; AND THE CALIFORNIA ASSOCIATION OF HEALTH FACILITIES,<br><br>        Plaintiffs,<br><br>    vs.<br><br>RONALD CHAPMAN, M.D., DIRECTOR OF THE CALIFORNIA DEPARTMENT OF PUBLIC HEALTH, THE CALIFORNIA DEPARTMENT OF PUBLIC HEALTH, and THE STATE OF CALIFORNIA.<br><br>        Defendants. | CASE NO.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

///

## INTRODUCTION

1. This action concerns California's unlawful restrictions on nursing home residents' ability to agree to resolve certain claims against facilities through alternative dispute resolution. California law provides that any agreement by a nursing home resident to waive rights to sue for violations of the Patient's Bill of Rights, California Health and Safety Code section 1599, *et seq.*, "shall be void as contrary to public policy." Cal. Health & Safety Code § 1430(b); *see also* § 1599.81(d). A recently promulgated regulation also requires that nursing homes advise residents that they may not waive their ability to sue for violations of the California Patient's Bill of Rights. Cal. Code Regs. tit. 22, § 72516(d).

2. California's restrictions on nursing homes' arbitration agreements are directly at odds with the Federal Arbitration Act's ("FAA") mandate that a written arbitration clause "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In the past year, the U.S. Supreme Court has confirmed the supremacy of the FAA over conflicting state law in two decisions: *AT&T Mobility LLC v. Concepcion*, 131 S.Ct 1740 (2011) and *Marmet Health Care Center, Inc. v. Brown*, 132 S.Ct. 1201 (2012). The *AT&T Mobility* and *Marmet* decisions represent a clearly articulated change in existing law concerning the scope of FAA preemption.

3. By this action, six skilled nursing facilities and an organization representing the interests of skilled nursing facilities seek a determination that the FAA preempts California Health and Safety Code sections 1430(b) ("Section 1430(b)") and 1599.81(d) ("Section 1599.81(d)"), and California Code of Regulations, Title 22, section 72516(d) ("Section 72516(d)") to the extent that these Sections purport to prohibit skilled nursing facilities' ("SNF") arbitration agreements from covering claims that arise out of the California Patient's Bill of Rights.

4. Plaintiffs seek declaratory and injunctive relief to prevent Sections 1430(b), 1599.81(d), and 72516(d) from being enforced against SNFs.

## PARTIES

5. Valley View Health Care Inc. dba Riverbank Nursing Center ("Riverbank") is, and at all times mentioned herein was, a California corporation which operates a 99-bed SNF in

---
1
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Riverbank, California and provides skilled nursing services to residents requiring post-acute and long-term care services. Riverbank enters into written agreements with residents to arbitrate disputes arising out of transactions involving interstate commerce. These transactions involve interstate commerce by virtue of Riverbank's participation in the Medicare and Medicaid (Medi-Cal in California) programs and through Riverbank's purchase of supplies from, among other vendors, those located out of state. Riverbank requires a resolution of the judiciable controversy as to the validity of Sections 1430(b), 1599.81(d) and 72516(d) to arbitration agreements covered by the FAA and also faces the risk of administrative action as a result of CDPH's power to enforce Sections 1430(b) and 1599.81(d) through Section 72516(d).

6. The Stonebrook Convalescent Center, Inc. dba Stonebrook Healthcare Center ("Stonebrook") is, and at all times mentioned herein was, a Missouri corporation which operates a 120-bed SNF in Concord, California and provides skilled nursing services to residents requiring post-acute and long-term care services. Stonebrook enters into written agreements with residents to arbitrate disputes arising out of transactions involving interstate commerce. These transactions involve interstate commerce by virtue of Stonebrook's participation in the Medicare and Medicaid (Medi-Cal in California) programs and through Stonebrook's purchase of supplies from, among other vendors, those located out of state. Stonebrook requires a resolution of the judiciable controversy as to the validity of Sections 1430(b), 1599.81(d) and 72516(d) to arbitration agreements covered by the FAA and also faces the risk of administrative action as a result of the California Department of Public Health's ("CDPH") power to enforce Sections 1430(d) and 1599.81(d) through Section 72516(d).

7. LifeHOUSE Parkview Operations, LLC dba Parkview Healthcare Center ("Parkview") is, and at all times mentioned herein was, a California limited liability company which operates a 184-bed skilled nursing facility in Bakersfield, California and provides skilled nursing services to residents requiring post-acute and long-term care services. Parkview enters into written agreements with residents to arbitrate disputes arising out of transactions involving interstate commerce. These transactions involve interstate commerce by virtue of Parkview's participation in the Medicare and Medicaid (Medi-Cal in California) programs and through

1 | Parkview's purchase of supplies from, among other vendors, those located out of state. Parkview
2 | requires a resolution of the judiciable controversy as to the validity of Sections 1430(b),
3 | 1599.81(d) and 72516(d) to arbitration agreements covered by the FAA and also faces the risk of
4 | administrative action as a result of CDPH's power to enforce Section 1430(b) and 1599.81(d)
5 | through Section 72516(d).

6 |     8.    Beverly Healthcare - California, Inc. dba Golden Living Center-Fresno ("Golden
7 | Living Center") is, and at all times mentioned herein was, a California corporation which operates
8 | a 232-bed skilled nursing facility in Fresno, California and provides skilled nursing services to
9 | residents requiring post-acute and long-term care services. Golden Living Center enters into
10 | written agreements with residents to arbitrate disputes arising out of transactions involving
11 | interstate commerce. These transactions involve interstate commerce by virtue of Golden Living
12 | Center's participation in the Medicare and Medicaid (Medi-Cal in California) programs and
13 | through Golden Living Center's purchase of supplies from, among other vendors, those located out
14 | of state. Golden Living Center requires a resolution of the judiciable controversy as to the validity
15 | of Sections 1430(b), 1599.81(d), and 72516(d) to arbitration agreements covered by the FAA and
16 | also faces the risk of administrative action as a result of CDPH's power to enforce Sections
17 | 1430(b) and 1599.81(d) through Section 72516(d).

18 |     9.    CF Modesto, LLC dba Country Villa Modesto Nursing & Rehabilitation Center
19 | ("Country Villa") is, and at all times mentioned herein was, a California limited liability company
20 | which operates a 99-bed skilled nursing facility in Modesto, California and provides skilled
21 | nursing services to residents requiring post-acute and long-term care services. Country Villa
22 | enters into written agreements with residents to arbitrate disputes arising out of transactions
23 | involving interstate commerce. These transactions involve interstate commerce by virtue of
24 | Country Villa's participation in the Medicare and Medicaid (Medi-Cal in California) programs and
25 | through Country Villa's purchase of supplies from, among other vendors, those located out of
26 | state. Country Villa requires a resolution of the judiciable controversy as to the validity of
27 | Sections 1430(b), 1599.81(d), and 72516(d) to arbitration agreements covered by the FAA and
28 | also faces the risk of administrative action as a result of CDPH's power to enforce Sections and

HOOPER, LUNDY & BOOKMAN, P.C.
575 MARKET STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94105
TEL: (415) 875-8500 • FAX: (415) 875-8519

1430(b) and 1599.81(d) through Section 72516(d).

10. Avalon Care Center – Merced Franciscan, L.L.C. dba Franciscan Convalescent Hospital ("Franciscan") is, and at all times mentioned herein was, a Utah limited liability company which operates a 68-bed skilled nursing facility in Merced, California and provides skilled nursing services to residents requiring post-acute and long-term care services. Franciscan enters into written agreements with residents to arbitrate disputes arising out of transactions involving interstate commerce. These transactions involve interstate commerce by virtue of Franciscan's participation in the Medicare and Medicaid (Medi-Cal in California) programs and through Franciscan's purchase of supplies from, among other vendors, those located out of state. Franciscan requires a resolution of the judiciable controversy as to the validity of Sections 1430(b), 1599.81(d), and 72516(d) to arbitration agreements covered by the FAA and also faces the risk of administrative action as a result of CDPH's power to enforce Sections and 1430(b) and 1599.81(d) through Section 72516(d).

11. Plaintiffs Riverbank, Stonebrook, Parkview, Golden Living Center, Country Villa and Franciscan are hereinafter collectively referred to as "Licensee Plaintiffs."

12. Plaintiff California Association of Health Facilities ("CAHF") is, and all times mentioned herein was, a non-profit association representing, among other long-term care providers, 1,230 licensed skilled nursing facilities in the State of California, a number of which are located within the Central District of California, Western Division.

13. CAHF is bringing this action on its own behalf and also as the "representative" of its member skilled nursing facilities. The vast majority of CAHF's member facilities participate in interstate commerce by certification in the Medicare and/or Medi-Cal programs and by purchasing supplies from, among other vendors, those located out of state. The CAHF members that have FAA-governed arbitration agreements requires a resolution of the judiciable controversy as to the validity of Sections 1430(b), 1599.81(d), and 72516(d) to arbitration agreements covered by the FAA and also face the risk of administrative action as a result of CDPH's power to enforce Section 1430(b) and 1599.81(d) through Section 72516(d). The protection of CAHF's members' interests in entering into arbitration agreements with their residents is germane to CAHF's

1  purpose.

2  14.  Licensee Plaintiffs and CAHF are hereinafter collectively referred to as
3  "Plaintiffs."

4  15.  Defendant Ron Chapman is, and at all times mentioned herein was, the Director of
5  the California Department of Public Health ("Director") and is sued in his official capacity.

6  16.  Defendant California Department of Public Health is the state agency responsible
7  for implementing the Standard Admission Agreement for SNFs and for monitoring SNFs'
8  compliance with Section 1430(b).

9  17.  The Defendants are referred to herein collectively as "CDPH."

## JURISDICTION AND VENUE

18.  Plaintiffs bring this complaint pursuant to 28 United States Code ("U.S.C.") § 1331 and the Supremacy Clause. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983).

19.  Venue lies in this judicial district under 28 U.S.C. § 1391, in that the Director has offices within this judicial district and is thus deemed to reside within this judicial district.

## STATUTORY AND FACTUAL BACKGROUND

### A.  The U.S. Supreme Court Affirms The Supremacy Of The FAA

20.  The Federal Arbitration Act provides that a provision in a contract "evidencing a transaction involving interstate commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

21.  The FAA applies to admission agreements where the SNF receives payments from the Medicare and/or Medi-Cal program(s) and purchases out-of-state supplies. The FAA preempts any state law that interferes with the enforceability of an otherwise valid agreement to arbitrate.

22.  The U.S. Supreme Court has recently confirmed the supremacy of the FAA over conflicting state laws in two recent decisions: *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740 (2011) and *Marmet Health Care Center, Inc. v. Brown*, 132 S.Ct. 1201 (2012). In both of these cases, the Supreme Court emphasized that "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the

FAA." (*AT&T Mobility LLC*, 131 S.Ct. at 1747 [emphasis added]; *Marmet Health Care Center, Inc.*, 132 S.Ct. at 1203.) In both of these cases, the Supreme Court invalidated appellate court rulings (one by the Ninth Circuit and one by the West Virginia Supreme Court) that would not have enforced otherwise valid arbitration agreements.

23.  In *AT&T Mobility LLC*, the Supreme Court overturned the Ninth Circuit's determination that arbitration agreements that disallowed class-wide proceedings were unconscionable (*i.e.*, contractually unfair) under California decisional law. In *Discover Bank v. Superior Court*, 36 Cal.4th 148 (2005), the California Supreme Court had previously held that class waivers in consumer arbitration agreements are unconscionable if certain factors are present. While unconscionability is a defense applicable generally to contracts, the Supreme Court noted that these general defenses could not be applied in a way that would "rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable[.]" The U.S. Supreme Court therefore determined that California's *Discover Bank* rule interfered with the FAA's policy to enforce arbitration insofar as the parties had agreed to individual, i.e., not class-based, arbitration.

24.  In February 2012, the U.S. Supreme Court specifically determined that states could <u>not</u> prohibit all predispute arbitration agreements that apply to claims alleging personal injury or wrongful death against nursing homes. *Marmet*, 132 S.Ct. 1201 (2012). In a consolidated action involving three negligence cases asserted against nursing homes in West Virginia, the West Virginia Supreme Court had held that "as a matter of public policy under West Virginia law, an arbitration clause in a nursing home admission agreement adopted prior to an occurrence of negligence that results in a personal injury or wrongful death, should not be enforced to compel arbitration of a dispute concerning the negligence." The West Virginia Supreme Court concluded that the FAA did not preempt the state public policy against these types of arbitration agreements. The Supreme Court disagreed, holding that the West Virginia Supreme Court's prohibition against these types of nursing home arbitration agreements "is a categorical rule prohibiting arbitration of a particular type of claim, and that rule is contrary to the terms and coverage of the FAA."

25.  Under the U.S. Supreme Court's *AT&T Mobility LLC* and *Marmet* decisions,

California's statutory and regulatory restrictions on SNFs' ability to use binding arbitration for violations of the Patient's Bill of Rights are preempted by the FAA and are therefore void and invalid.

### B. California Restrictions On Nursing Home Arbitration Agreements

26. Under California law, nursing homes cannot require their customers to enter into a binding arbitration agreement. It is entirely voluntary. However, California nursing homes face various legal obstacles to the formation of arbitration agreements and restrictions applicable only to arbitration agreements. These include Section 1430(b), which provides that "[a]n agreement by a resident or patient of a skilled nursing facility or intermediate care facility to waive his or her rights to sue [pursuant to the Patient's Bill of Rights] shall be void as contrary to public policy." Section 1430(b) purportedly invalidates providers' arbitration agreements that are otherwise valid and enforceable under the FAA.

27. Furthermore, Section 1599.81(d) provides that a nursing home "contract attachment pertaining to arbitration shall contain notice that under Section 1430, the patient may not waive his or her ability to sue for violation of the Patient's Bill of Rights." This section mandates that providers' arbitration agreements contain a carve-out for claims based on violations of the Patients' Bill of Rights, thereby forcing providers to choose between implementing comprehensive arbitration clauses and staying in compliance with state law on a daily basis.

28. The CDPH recently implemented a Standard Admission Agreement ("SAA") that is used by all SNFs as defined in subdivision(c) of section 1250 of the Health and Safety Code. On our about June 9, 2011, during the rulemaking process concerning the SAA and its implementing regulations, CAHF submitted comments explaining why Sections 1430(b), 1599.81(d), and 72516(d) are preempted by the FAA.

29. CAHF's comments explained that, among other things, the draft Section 72516(d) impermissibly interferes with facilities ability to use arbitration and therefore is preempted by the FAA. CAHF noted that Section 72516(d)

> states that residents 'cannot waive the ability to sue for violation of the Resident Bill of Rights.' (emphasis in original SAA regulations) Although this language is included in Health and Safety Code Section 1599.81 (and language with a similar

meaning is included in Section 1430(b), CAHF is increasingly of the view that the *AT&T Mobility* decision preempts 1599.81(d) and 1430(b). These laws plainly single out and discriminate against arbitration on a basis that is not at all equal to how contracts are enforced. In *AT&T Mobility*, the Court broadly ruled that "[w]hen state law prohibits outright the arbitration of a particular claim, the analysis is straightforward: The conflicting rule is displaced by the FAA". 131 S.Ct. 1740, 1747 . . . CAHF believes that these two state laws are preempted, and that the DPH is prohibited from passing new regulatory rules that continue to impede enforcement of valid arbitration agreements, particularly when these agreements are voluntary and are not a condition of admission to a facility.

CAHF recommended that the CDPH review current case law in consultation with legal counsel and make a determination as to whether Section 72516(d) is preempted by the FAA.

30. In the statement of reasons dated August 2, 2011, the CDPH acknowledged that several commentators concluded that *AT&T Mobility* "requires that the [CDPH] modify a provision in the regulation as a statute on which it is based, [Section 1430(b)], is likely preempted by the Federal Arbitration Act . . . " The CDPH explained that "even if the [CDPH] agreed with the commentators, the [CDPH] is prohibited from complying with this request by Article 3, Section 3.5 of the California Constitution."

31. The CDPH published the final SAA and relevant implementing regulation (Title 22, California Code of Regulations, section 72516(d), which incorporated by reference the SAA) on September 29, 2011. The final Title 22, California Code of Regulations, section 72516(d) requires SNFs to use the SAA without "alteration," except where blanks allow SNFs to add information. Section 72516(d) prohibits the presentation of an arbitration agreement as part of the SAA, requiring that arbitration agreements be separate and include a notice that, under Section 1430(b), a patient may not waive his or her ability to sue for violations of the Patient's Bill of Rights.

32. The SAA and its implementing regulations became effective on March 29, 2012 and are required to be used for all admissions occurring on that date or thereafter.

## FIRST CAUSE OF ACTION

### (DECLARATORY RELIEF)

33. Plaintiffs hereby incorporate by reference paragraphs 1 through 32 inclusive, as through fully set forth herein.

34. An actual and justiciable controversy exists between Plaintiffs and CDPH regarding the validity of Sections 1430(b), 1599.81(d), and 72516(d). Plaintiffs contend that these Sections are unlawful and invalid in violation of the FAA as they impermissibly single out and discriminate against arbitration on a basis that is not applied equally to all contracts, while CDPH contends that the California Constitution requires CDPH to carry out current California law.

35. Furthermore, there exists a present controversy between Plaintiffs and CDPH in that Plaintiffs' rights are being violated on a daily basis by state law that precludes enforcement of arbitration agreements governed by the FAA.

36. An actual and justiciable controversy between Plaintiffs and CDPH also exists because Plaintiffs are presently precluded from drafting and implementing FAA-governed arbitration agreements wherein the parties agree to arbitrate all claims.

37. Accordingly, pursuant to 28 U.S.C. section 2201, Plaintiffs request this Court declare that Sections 1430(b), 1599.81(d), and 72516(d) are invalid, unlawful, and preempted by the FAA.

## SECOND CAUSE OF ACTION

### (VIOLATION OF THE FAA/SUPREMACY CLAUSE)

38. Plaintiffs hereby incorporate by reference paragraphs 1 through 36 inclusive, as through fully set forth herein.

39. Section 1430(b) is invalid as to the SNF facilities that have FAA-governed arbitration agreements, and is therefore preempted by the Supremacy Clause, in that it prohibits outright the arbitration of a particular type of claim in violation of the FAA.

40. Section 1599.81(d) is invalid as to the SNF facilities that have FAA-governed arbitration agreements, and is therefore preempted by the Supremacy Clause, in that it violates the FAA by requiring nursing homes to advise residents that they may not waive their right to sue for violation of the Patient's Bill of Rights.

41. Section 72516(d) is invalid as to the SNF facilities that have FAA-governed arbitration agreements, and is therefore preempted by the Supremacy Clause, in that it violates the FAA by requiring nursing homes to advise residents that they may not waive their right to sue for

1 violation of the Resident Bill of Rights.

2     42.    No administrative appeal process or other administrative remedy is available to Plaintiffs or CAHF's members to challenge the Sections.

    43.    All of the said injuries are great, immediate, and irreparable, for which damages at law are inadequate, and for which Plaintiffs, or CAHF's members, have no plain, adequate or speedy relief at law or otherwise.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

A.    For an order declaring that Sections 1430(b), 1599.81(d), and 72516(d) violate the FAA and are thus invalid and preempted by the Supremacy Clause of the United States Constitution, art. IV;

B.    For an order preliminarily and permanently enjoining the Director from effectuating or otherwise enforcing Sections 1430(b), 1599.81(d), and 72516(d);

C.    For an order awarding costs of suit; and

D.    For an order providing such further relief as this Court deems proper.

DATED: January 7, 2013    HOOPER, LUNDY & BOOKMAN, P.C.

By: _____
MARK E. REAGAN
Attorneys for PLAINTIFFS