IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALLEY VIEW HEALTH CARE, INC., et al., | CASE NO. CV F 13-0036 LJO BAM |
| | **ORDER ON DEFENDANTS' F.R.Civ.P. 12 MOTION TO DISMISS** |
| Plaintiffs, | (Doc. 19.) |
| vs. | |
| RONALD CHAPMAN, M.D., DIRECTOR OF THE CALIFORNIA DEPARTMENT OF PUBLIC HEALTH, et al., | |
| Defendant. | |
| _____ / | |

**PRELIMINARY STATEMENT TO COUNSEL AND PARTIES**

Judges in the Eastern District of California carry the heaviest caseload in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. This Court cannot address all arguments, evidence and matters raised by parties and addresses only the arguments, evidence and matters necessary to reach the decision in this order given the shortage of district judges and staff. The parties and counsel are encouraged to contact the offices of United States Senators Diane Feinstein and Barbara Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to consider consent to a Magistrate Judge to conduct all further proceedings in that the Magistrate Judges' availability is far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill who must prioritize criminal and older civil cases.

Civil trials set before Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from outside the Eastern District of California.

## INTRODUCTION

Defendants California Department of Public Health and its director Ronald Chapman, M.D. (collectively "CDPH") seek to dismiss plaintiff skilled nursing facilities and non-profit association's declaratory and injunctive relief claims for failure to invoke this Court's subject matter jurisdiction and to allege a judiciable controversy. Plaintiffs respond that they are entitled to pursue in this Court their claims to challenge as preempted by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, et al., "California's unlawful restrictions on nursing home residents' ability to agree to resolve certain claims against facilities through arbitration." This Court considered CDPH's F.R.Civ.P. 12(b)(1) and (6) motion to dismiss on the record without a hearing. *See* Local Rule 230(g). For the reasons discussed below, this Court DENIES dismissal of plaintiffs' claims.

## BACKGROUND

### Summary

Plaintiff California Association of Health Facilities ("CAHF") is a non-profit association representing licensed skilled nursing facilities and brings this action on its behalf and as representative of its member skilled nursing facilities. Six California skilled nursing facilities are also plaintiffs[1] and with CAHF (collectively "plaintiffs") challenge the validity of California statutes and regulations to restrict skilled nursing facilities' arbitration of violations of the Patient's Bill of Rights, California Health and Safety Code, §§ 1599, et seq., as contrary to the FAA. CDPH monitors skilled nursing facilities' compliance with applicable California laws and contends that plaintiffs' challenges to the California statutes and regulations fail to invoke this Court's subject matter jurisdiction and to state a

---

[1] The six plaintiff skilled nursing facilities provide skilled nursing services to residents who require post-acute and long-term care.

2

judiciable controversy to warrant dismissal of plaintiffs' claims.

## Challenged Statutes And Regulations

California's Patient's Bill of Rights set forth "fundamental human rights which all patients shall be entitled to in a skilled nursing, intermediate care facility, or hospice facility. Cal. Health & Safety Code, § 1599. Plaintiffs challenge California statutes and regulations which address arbitration of the Patient's Bill of Rights and which include California Health and Safety Code sections 1430(b) ("section 1430(b)") and 1599.81(d) ("section 1599.81(d)") and California Code of Regulations, Title 22, section 72516(d) ("section 72516(d)").

Section 1430(b) provides in pertinent part:

> A current or former resident or patient of a skilled nursing facility . . . may bring a civil action against the licensee of a facility who violates any rights of the resident or patient as set forth in the Patients Bill of Rights . . ., or any other right provided for by federal or state law or regulation. . . . The licensee shall be liable for the acts of the licensee's employees. The licensee shall be liable for up to five hundred dollars ($500), and for costs and attorney fees, and may be enjoined from permitting the violation to continue. **An agreement by a resident or patient of a skilled nursing facility or intermediate care facility to waive his or her rights to sue pursuant to this subdivision shall be void as contrary to public policy.** (Bold added.)

Section 1599.81(d) provides that if a contract for skilled nursing facility admission "contains an arbitration clause, the contract attachment pertaining to arbitration shall contain notice that under Section 1430, the patient may not waive his or her ability to sue for violation of the Patient's Bill of Rights." Plaintiffs note that section 1599.81(d) requires arbitration agreements for skilled nursing facilities to carve out claims based on the California Patient's Bill of Rights.

Section 72516(d) provides:

> The licensee shall not present any arbitration agreement to a prospective resident as a part of the Standard Admission Agreement. Any arbitration agreement shall be separate from the Standard Admission Agreement and shall contain the following advisory in a prominent place at the top of the proposed arbitration agreement, in bold-face font of not less than 12 point type: **"Residents shall not be required to sign this arbitration agreement as a condition of admission to this facility, and cannot waive the ability to sue for violation of the Resident Bill of Rights."** (Bold in original.)

## Plaintiffs' Claims

Plaintiffs proceed on their Complaint for Declaratory and Injunctive Relief ("complaint") to

3

allege that sections 1430(b), 1599.81(d) and 72516(d) (collectively the "arbitration laws") are preempted by the FAA and void by prohibiting skilled nursing facilities' arbitration agreements to cover claims arising out of the California Patient's Bill of Rights. The complaint's (first) declaratory relief claim alleges that the arbitration laws violate the FAA "as they impermissibly single out and discriminate against arbitration on a basis that is not applied equally to all contracts" to result in violation of plaintiffs' rights "by state law that precludes enforcement of arbitration agreements governed by the FAA." The complaint's (second) FAA violation claim alleges the arbitration laws violate the FAA by prohibiting "arbitration of a particular type of claim" and "by requiring nursing homes to advise residents that they may not waive their right to sue for violation of the Patient's Bill of Rights."

## DISCUSSION

### Subject Matter Jurisdiction

#### *F.R.Civ.P. 12(b)(1) Motion To Dismiss Standards*

CDPH contends that this Court lacks subject matter jurisdiction over the complaint's FAA claims in that the complaint fails to allege an independent federal right sufficient to invoke federal question jurisdiction.

F.R.Civ.P. 12(b)(1) authorizes a motion to dismiss for lack of subject matter jurisdiction. Fundamentally, federal courts are of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 341 (1994). A "court of the United States may not grant relief absent a constitutional or valid statutory grant of jurisdiction." *U.S. v. Bravo-Diaz*, 312 F.3d 995, 997 (9th Cir. 2002). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes*, 873 F. 2d 1221, 1225 (9th Cir. 1989). Limits on federal jurisdiction must neither be disregarded nor evaded. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374, 98 S.Ct. 2396 (1978). "When subject matter jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Tosco Corp. v. Communities for Better Environment*, 236 F.3d 495, 499 (9th Cir. 2001).

Because standing pertains to a federal court's subject-matter jurisdiction under Article III, it is properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). *White v. Lee*, 227

F.3d 1214, 1242 (9th Cir. 2000).

Lack of subject matter jurisdiction "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506, 126 S.Ct. 1235 (2006). F.R.Civ.P. 12(h)(3) instructs: "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

With these standards in mind, this Court turns to CDPH's challenge to federal question jurisdiction.

## Federal Question Jurisdiction

The complaint asserts subject matter jurisdiction under 28 U.S.C. § 1331 (federal question – "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States") and the Supremacy Clause. CDPH characterizes the complaint to rely on the FAA for its toe hold to federal question jurisdiction.

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, et seq., applies to written arbitration agreements. Written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "In enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S.Ct. 852, 858 (1984). The FAA reflects an "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 631, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). "The enactment establishes a strong federal policy in favor of the resolution of disputes through arbitration." *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3rd Cir. 2003). "[F]ederal law presumptively favors the enforcement of arbitration agreements." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178 (3rd Cir. 1999). The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Hospital v. Mercury Construction*, 460 U.S. 1, 24-25, 103 S.Ct. 927 (1983).

Nonetheless, although the FAA "creates federal substantive law requiring the parties to honor arbitration agreements, it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 or otherwise." *Southland Corp. v. Keating*, 465 U.S. 1, 16, n. 9, 104 S.Ct. 852 (1984). 9 U.S.C. § 4 authorizes a federal court with jurisdiction to enforce arbitration:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, **would have jurisdiction under Title 28, in a civil action** or in admiralty **of the subject matter of a suit arising out of the controversy between the parties**, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.  (Bold added.)

"Section 4 provides for an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute; hence, there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24, n. 32, 103 S.Ct. 927 (1983).  "The FAA is not an independent source of jurisdiction. A party may obtain relief in federal court under the FAA only when the underlying civil action would otherwise be subject to the court's federal question or diversity jurisdiction." *Rio Grande Underwriters, Inc. v. Pitts Farms, Inc.*, 276 F.3d 683, 685 (5th Cir. 2001).

CDPH argues that the complaint's reliance on the FAA and federal preemption are insufficient to invoke subject matter jurisdiction as "the FAA is not an independent source of jurisdiction." "[C]onflict preemption is a defense, not an independent basis for jurisdiction." *Rio Grande Underwriters*, 276 F.3d at 685. CDPH notes that federal jurisdiction does not arise "merely on a federal defense – including federal preemption." CDPH points to the complaint's absence of allegations "that Plaintiffs have any other federal substantive right arising under another federal law that serves as an independent basis of federal question jurisdiction."

Plaintiffs respond that they do not allege that "the FAA, by itself, confers federal question jurisdiction." Plaintiffs characterize the Supremacy Clause as "the actual basis of jurisdiction" to allow claims against a state official in her/her official capacity to seek "relief from state regulation on the ground that such regulation is preempted by federal law." Plaintiffs explain that "federal question jurisdiction exists by virtue of the Supremacy Clause because Plaintiffs seek equitable relief from state

6

regulation on the ground that such regulation is preempted by federal law."

"[F]ederal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96, n. 14, 103 S.Ct. 2890 (1983). "A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." *Shaw*, 463 U.S. 85, 96, n. 14, 103 S.Ct. 2890.

The complaint invokes this Court's subject matter jurisdiction under the Supremacy Clause and in turn a federal question under 28 U.S.C. § 1331. The complaint does not merely rest on FAA preemption to support subject matter jurisdiction. The compliant does not rely on the FAA as an independent source of jurisdiction in that the complaint seeks to preclude enforcement of the arbitration laws as infringing ability to arbitrate. Plaintiffs' legal authorities demonstrate this Court's subject matter jurisdiction to hear plaintiffs' challenges to the arbitration laws.

## Case Or Controversy

CDPH faults the complaint's failure to allege FAA relief and in turn a justiciable case or controversy in the absence of allegations to enforce an arbitration agreement or to compel arbitration between any plaintiff and a patient. As such, CDPH further seeks F.R.Civ.P. 12(b)(6) dismissal.

### *F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards*

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995). A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In addressing dismissal, a court must: (1) construe the complaint in the light most favorable to

1  the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff
2  can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80
3  F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is not required "to accept as true allegations that
4  are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead*
5  *Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court "need not
6  assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v.*
7  *Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must not "assume that the [plaintiff] can prove
8  facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been
9  alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*,
10 459 U.S. 519, 526, 103 S.Ct. 897 (1983). A court need not permit an attempt to amend if "it is clear that
11 the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney,*
12 *Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).
13     With these standards in mind, this Court turns the CDPH challenge that the complaint lacks "an
14 actual justiciable controversy."

### *Declaratory Relief*

16     CDPH challenges the need to resolve the validity of the arbitration laws given the complaint's
17 absence of allegations of an FAA-governed agreement breached by a California patient's refusal to
18 arbitrate.
19     "A plaintiff seeking to invoke federal court jurisdiction must plead that he has suffered some
20 cognizable injury to make the threshold showing of a case or controversy." *Fleck and Associates, Inc.*
21 *v. Phoenix, etc.*, 471 F.3d 1100, 1104 (9th Cir. 2006). The Declaratory Judgment Act ("DJA"), 28 U.S.C.
22 §§ 2201, 2202, provides in pertinent part:

23     In a case of actual controversy within its jurisdiction . . . any court of the United
       States, upon the filing of an appropriate pleading, may declare the rights and other legal
24     relations of any interested party seeking such declaration, whether or not further relief
       is or could be sought. Any such declaration shall have the force and effect of a final
25     judgment or decree and shall be reviewable as such.

26 28 U.S.C. §2201(a).
27     "When presented with a claim for a declaratory judgment, therefore, federal courts must take care
28 to ensure the presence of an actual case or controversy, such that the judgment does not become an

8

unconstitutional advisory opinion." *Rhoades v. Avon Products, Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007). A DJA action requires a district court to "inquire whether there is a case of actual controversy within its jurisdiction." *American States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994).

Declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir.1984).

As to a controversy to invoke declaratory relief, the question is whether there is a "substantial controversy, between parties having adverse legal rights, or sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512 (1941). The U.S. Supreme Court has further explained:

> A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. . . . The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Haworth*, 300 U.S. at 240-241, 57 S.Ct. at 464 (citations omitted).

CDPH argues that the complaint lacks sufficient allegations of a case or controversy to warrant declaratory relief. CDPH points to the complaint's allegation that plaintiffs "require a resolution of the judiciable controversy" as to the arbitration laws' validity and face risk of CDPH action to enforce the arbitration laws. CDPH faults the complaint's failure to allege a cognizable claim for an FAA violation in that the "complaint is devoid of any allegation that any California SNF [skilled nursing facility] patient has refused to arbitrate an existing valid arbitration agreement" with plaintiffs or a CAHF member. CDPH characterizes as legal conclusions the complaint's allegations that the arbitration laws "prohibit outright arbitration agreements to arbitrate violations of Patient Bill of Rights." CDPH concludes that "no claim can be stated for conflict preemption" between the FAA and the challenged arbitration laws based on plaintiffs' "erroneous conclusions of law" and failure to establish "immediacy and reality."

Plaintiffs respond that the complaint properly seeks declaratory relief in that it alleges an actual

and judiciable controversy given the parties' differing views of the validity of the arbitration laws which violate plaintiffs' rights to utilize and enforce arbitration agreements governed by the FAA. Plaintiffs note that arbitration laws create duties which address their licensure and compliance monitored by CDPH and that CDPH may challenge licensure for failure to comply with the arbitration laws. Plaintiffs note that they are compelled to give up arbitration rights or to disobey the arbitration laws to expose them to sanctions. Plaintiffs characterize CDPH to misconstrue the complaint to seek substantive FAA relief.

The complaint adequately alleges plaintiff's case or controversy to challenge via declaratory and injunctive relief the arbitration laws. The parties differ on the arbitration laws' validity and whether the FAA invalidates them. Plaintiffs are entitled to challenge the arbitration laws to avoid CDPH sanctions and challenge to their licensure. The complaint alleges a substantial controversy of sufficient immediacy and reality to permit plaintiffs to test the arbitration laws. Declaratory relief is poised to clarify legal relations as to the arbitration laws and instill certainty as to their validity and enforcement.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. DENIES dismissal of the complaint's claims; and
2. ORDERS defendants Ronald Chapman, M.D., and CDPH, no later than April 16, 2013, to file and serve a F.R.Civ.P. 7(a)(2) answer to the complaint.

IT IS SO ORDERED.

Dated:   April 2, 2013            /s/  Lawrence J. O'Neill
                                  UNITED STATES DISTRICT JUDGE