UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

VALLEY VIEW HEALTH CARE, INC., *et al.*,
Plaintiffs,

v.

RONALD CHAPMAN, Director of the California Department of Public Health, *et al.*

Defendants.
_______________________________________/

Case No. 1: 13-cv-0036-LJO-BAM

ORDER ON PROPOSED INTERVENORS' MOTION TO INTERVENE AS DEFENDANTS

(Doc. 36)

On January 8, 2013, Plaintiffs Valley View Health Care Inc., *et al.*, brought the underlying action which challenges various state laws prohibiting skilled nursing facilities ("SNF's") from entering into arbitration agreements with nursing home residents on the grounds of federal preemption. (Doc. 1).

On July 25, 2013, the California Advocates for Nursing Home Reform ("CANHR") and Glenn Patrick ("Mr. Patrick"), by and through his conservators, Nell Sulborski and Jeanne Patrick (collectively "Proposed Intervenors") filed a Motion to Intervene as defendants pursuant to Federal Rule of Civil Procedure 24. (Doc. 36). CANHR, a statewide nonprofit organization providing legal services for California nursing home residents, moves to intervene as an advocacy group representing the interests of nursing facility residents and on behalf of Mr. Patrick, an individual nursing home

resident at Plaintiff Golden Living Center HyPana in Modesto, California. Defendants Ronald Chapman, the Director of the California Department of Public Health, and the California Department of Public Health filed a non-opposition on August 8, 2013. (Doc. 43).

Plaintiffs filed their opposition on August 8, 2013. (Doc. 42), and CANHR filed its reply brief on August 15, 2013. (Doc. 42, 46). The Court heard oral arguments on August 23, 2013. Counsel Katherine Miller appeared by telephone for Plaintiffs. Counsel Pauline Gee and Ashante Norton appeared by telephone for Defendants. Counsel Gretchen Nelson appeared in person on behalf of the Proposed Intervenors. Counsel Kelly Bagby appeared on behalf of the AARP Foundation by telephone in support of Proposed Intervenors. Having carefully considered the parties' submissions, argument of counsel, and the entire record in this case, the Court DENIES the Proposed Intervenors' Motion to Intervene.

**BACKGROUND**

Plaintiff California Association of Health Facilities ("CAHF") is a non-profit association representing licensed skilled nursing facilities and brings the underlying action on its behalf and as representative of its member skilled nursing facilities. Plaintiffs' Complaint at ¶¶ 1-3, Doc. 1. Six California skilled nursing facilities are also plaintiffs and with CAHF (collectively "Plaintiffs"), challenge the validity of California statutes and regulations to restrict skilled nursing facilities' arbitration of violations of the Patient's Bill of Rights[1] ("PBOR"), California Health and Safety Code, §§ 1599, *et seq*., as contrary to the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1. Plaintiffs seek declaratory and injunctive relief to prevent California Health and Safety Code §§ 1430(b), 1599.81(d), and California Code of Regulations Title 22 § 72516(d) from being enforced against California nursing home facilities. *Id*. at ¶ 4.

Section 1430(b) provides in pertinent part:

> A current or former resident or patient of a skilled nursing facility . . . may bring a civil action against the licensee of a facility who violates any rights of the resident or patient as set forth in the Patients' Bill of Rights . . ., or any other right provided for by federal or state law or regulation. . . . The licensee shall be liable for the acts of the licensee's

---

[1] California's Patients' Bill of Rights set forth "fundamental human rights which all patients shall be entitled to in a skilled nursing, intermediate care facility, or hospice facility." Cal. Health & Safety Code, § 1599.

> employees. The licensee shall be liable for up to five hundred dollars ($500), and for costs and attorney fees, and may be enjoined from permitting the violation to continue. **An agreement by a resident or patient of a skilled nursing facility or intermediate care facility to waive his or her rights to sue pursuant to this subdivision shall be void as contrary to public policy.** (Bold added.)

Section 1599.81(d) provides that if a contract for skilled nursing facility admission "contains an arbitration clause, the contract attachment pertaining to arbitration shall contain notice that under Section 1430, the patient may not waive his or her ability to sue for violation of the Patient's Bill of Rights." Plaintiffs note that section 1599.81(d) requires arbitration agreements for skilled nursing facilities to carve out claims based on the California Patient's Bill of Rights.

Section 72516(d) provides:

> The licensee shall not present any arbitration agreement to a prospective resident as a part of the Standard Admission Agreement. Any arbitration agreement shall be separate from the Standard Admission Agreement and shall contain the following advisory in a prominent place at the top of the proposed arbitration agreement, in bold-face font of not less than 12 point type: "**Residents shall not be required to sign this arbitration agreement as a condition of admission to this facility, and cannot waive the ability to sue for violation of the Resident Bill of Rights.**" (Bold in original.)

On July 25, 2013, Proposed Intervenors requested intervention. By this motion, Proposed Intervenors allege that they have a direct interest in this action and accordingly seek leave to intervene on behalf of nursing home residents to present several public policy considerations why claims by nursing home residents against SNF's should not be arbitrable. (Doc. 36).

**DISCUSSION**

CANHR argues it is entitled to intervene as a matter of right pursuant to Fed. R. Civ. P 24(a), or in the alternative, that it satisfies the requirements for permissive intervention pursuant to Fed. R. Civ. P. 24(b). Plaintiffs respond that CANHR not only fails to meet the requirements of Rule 24(a) and (b), but also that CANHR's Motion to Intervene is procedurally improper under Rule 24(c) and highly prejudicial to Plaintiffs. (Doc. 42).

**1. Intervention as a Matter of Right**

Plaintiffs' first argue that CANHR cannot satisfy the requirements for intervention as a matter of right for three reasons: (1) CANHR's motion to intervene is untimely; (2) Proposed Intervenor, Mr.

Patrick, has not shown that he has a significant protectable interest because he is not subject to a signed agreement to arbitrate; and (3) government defendants adequately represent CANHR's interests.

**A. Legal Standard**

Pursuant to Federal Rule of Civil Procedure 24(a), an applicant is entitled to intervene as a matter of right if four conditions are met: (1) the application is timely; (2) the applicant has a "significant protectable interest" in the action; (3) "the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest;" and (4) "the existing parties may not adequately represent the applicant's interest." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). "While an applicant seeking to intervene has the burden to show that these four elements are met, the requirements are broadly interpreted in favor of intervention." *Id.* (citing, *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006)). In evaluating whether the requirements are met, courts are "guided primarily by practical considerations, not technical distinctions." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001). As the Ninth Circuit has explained:

> A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts. By allowing parties with a practical interest in the outcome of a particular case to intervene, [courts] often prevent or simplify future litigation involving related issues; at the same time, [they] allow an additional interested party to express its views before the court.

*U.S. v. City of Los Angeles*, 288 F.3d 391, 397–98 (9th Cir. 2002).

**B. Timeliness**

Plaintiffs argue that CANHR's motion is untimely as it was filed seven months after the complaint and noticed for hearing just one month prior to the close of fact discovery. (Doc. 33). Plaintiffs argue this is particularly egregious because CANHR intends to expand the scope of the underlying case beyond the issues framed by the existing pleadings. According to Plaintiffs, the Proposed Intervenors intend to develop various fact arguments concerning the purported public policy benefits of litigating versus arbitrating PBOR claims. In Plaintiffs' view, those arguments are irrelevant to the strict legal question of whether the FAA preempts California's restrictions on nursing

home residents' ability to enter into voluntary, predispute arbitration agreements.

CANHR responds that this case remains at an early stage and that any delay was due in large part to Defendants' motion to dismiss. While this suit was filed seven months ago, CANHR filed its Motion only four months after the Court denied Defendants' motion to dismiss. According to CANHR, requesting intervention while Defendants' motion to dismiss was pending would waste judicial resources.

Timeliness is a "threshold requirement for intervention as a right." *Hazel Green Ranch, LLC v. U.S. Dep't of Interior*, No. 1:07-cv-00414 OWW-SMS, 2007 WL 2580570, at *3 (E.D. Cal. Sept. 5, 2007). In determining whether a motion to intervene is timely, courts weigh three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Zurich Am. Ins. Co. v. ACE Am. Ins. Co*.,No. 11-cv-0881-KJM, 2012 WL 3884695, at *2 (E.D. Cal. Sept. 6, 2012) (citing *U.S. v. Alisal Water Corp*., 370 F.3d 915, 921 (9th Cir. 2004)). "Timeliness is a flexible concept; its determination is left to the district court's discretion." *United States v. Alisal Water Corp*., 370 F.3d 915, 921 (9th Cir. 2004) (citation omitted).

Since the motion to intervene was filed one month shy of the fact discovery deadline, the first factor of timeliness weighs heavily against the Proposed Intervenors. The Court's primary concerns regarding timeliness are whether intervention will impair the Scheduling Order and whether Plaintiffs will be prejudiced by additional discovery and delay if CANHR is allowed to intervene. At oral argument, CANHR indicated that any propounded discovery will be minimal, and Proposed Intervenors will work within the confines of the current Scheduling Order. However, Proposed Intervenors' belief that it will not need to conduct discovery outside the Scheduling Order does not carry the day. Plaintiffs would be entitled to conduct discovery if Proposed Intervenors become a party in the case. Plaintiffs would thus simultaneously propound discovery while responding to Proposed Intervenors discovery all within a 30-day window, which the Court deems unduly burdensome. Despite assurances of minimal fact discovery, Proposed Intervenors have not established that there is enough time to reasonably accommodate additional discovery before the fact discovery deadline.

In addition, Proposed Intervenors concede that they seek discovery to present factual evidence regarding the public policy impact of restricting residents' access to courts. Plaintiffs' primary objection to intervention and resulting discovery is that factual public policy arguments are irrelevant to the strict legal question of whether the FAA preempts the statutes and regulation at issue. Plaintiffs' challenge to Proposed Intervenors factual discovery on relevancy and other grounds ensures the potential for discovery disputes. The Court agrees that the purely legal issues in this case make the discovery proposed by Intervenors irrelevant. Consequently, the Scheduling Order undoubtedly will be modified, or requests to modify will be made.

The underlying suit addresses whether the State statutes and regulation as written are contrary to the FAA. Thus, permitting intervention will delay unnecessarily the proceedings and jeopardize judicial economy with requests for extensions and inevitable law and motion practice. In light of the discovery deadline and the potential for prejudice to Plaintiffs, Proposed Intervenors' Motion is untimely.

**C. Significant Protectable Interest**

CANHR cites several protectable interests as the basis for its intervention. Specifically, Proposed Intervenors are a nursing home resident and a statewide organization representing the interest of nursing home residents. This litigation concerns the admission agreements between nursing homes and their residents. Therefore, the outcome of this litigation will affect the relationship between nursing homes and residents, as well as residents' possible access to the courts. *See e.g. Cleary v. Waldman*, 959 F. Supp 222 (D.N.J. 1997) (nursing home associations had a right to intervene in an action where the State was being asked to take regulatory action against nursing homes, further because individual members of the intervenors had standing in this suit). CANHR also argues that drafting and shaping the terms of nursing home agreements is fundamental to its purpose. According to CANHR, they have sponsored or co-sponsored several pieces of legislation related to nursing home admission agreements making intervention necessary to ensure that their previous legislative efforts are not subverted through the underlying lawsuit. Finally, if Plaintiffs succeed in enjoining the enforcement of the new provisions preventing arbitration, as a practical matter, the result will largely eliminate nursing home patients' right to a jury trial.

Plaintiffs disagree stating that CANHR has not established a protectable interest because the statutes at issue only affect residents who have signed predispute arbitration agreements and there is no evidence that Mr. Patrick has "signed a voluntary, predispute arbitration agreement in connection with [his] SNF residency." (Doc. 11 at 16).

Whether an applicant for intervention as of right demonstrates sufficient interest in an action is a 'practical, threshold inquiry,' and '[n]o specific legal or equitable interest need be established.'" *Citizens for Balances Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (quoting *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 836 (9th Cir.1996)). "To demonstrate a significant protectable interest, an applicant must establish that the interest is protectable under some law and that there is a relationship between the legally protected interest and the claims at issue." *Id*. "An applicant generally satisfies the 'relationship' requirement only if the resolution of the plaintiff's claims actually will affect the applicant." *Donnelly v. Glickman*, 159 F.3d 405, 410 (9th Cir.1998). No bright line rule determines whether the applicant has a significant interest. *Southern Cal. Edison Co. v. Lynch*, 307 F.3d 794, 802-803 (9th Cir.2002).

There is no dispute that CANHR is an official proponent of the Patients' Bill of Rights and its treatment of arbitration agreements between SNF's and nursing home residents. (Doc. 36 at 7). This Court has found a significant protectable interest where a public interest group sought to intervene in an action challenging a statute based on the party's support of the enacting legislation. *See Pickup v. Brown*, 2012 U.S. Dist. LEXIS 172027 (E.D. Cal. Dec. 4, 2012) (public interest group who sponsored challenged legislation had a significantly protectable interest where legislation was the subject of the underlying action).

Further, Plaintiffs' argument that Mr. Patrick lacks standing because he has not signed a binding arbitration agreement is without merit for two reasons. First, as alleged in the declaration of Nell Sulborski, even if Mr. Patrick or facility residents initially refuse to sign arbitration agreements upon admission to a nursing home facility, they are often pressured to sign agreements at a later date by nursing staff who impliedly condition continued stay in the facility upon agreeing to arbitrate. Nell Decl. ¶ 3. Indeed, although Mr. Patrick has not yet agreed to arbitration, Mr. Patrick's conservators have received several phone calls urging him to sign an arbitration agreement since his admission to

the Golden Living facility. Nell Decl. ¶ 5,6. Second, Ninth Circuit precedent generally indicates that interveners are not required to demonstrate Article III standing independent of the defendants. *See Vivid Entm't, LLC v. Fielding*, 2013 U.S. Dist. LEXIS 109251, at * (C.D. Cal. Aug. 2, 2013) (official proponents of a ballot measure did not need to meet Article III standing requirements to intervene)

Finally, according to CANHR, the relief sought by Plaintiffs would result in undoing all of the Proposed Intervenors efforts to insure that patients are adequately apprised of their rights and maintain the power to give voluntary and informed consent. The Court agrees that Proposed Intervenors have shown a significant protectable interest.

**D. Adequate Representation**

Finally, the Court turns to whether the government defendants will adequately represent the Proposed Intervenors' interests in this action. When evaluating the adequacy of representation, the Court must consider three factors: (1) whether the present parties will "undoubtedly make all of the intervenor's arguments;" (2) whether the present parties can and will make those arguments; and (3) whether the proposed intervenor "offers a necessary element to the proceedings that would be neglected." *Zurich*, 2012 WL 3884695, at *3 (quoting *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983)). The most important factor is "how the interest compares with the interest of existing parties." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003).

Plaintiffs argue that the Court should deny Proposed Intervenors' motion for intervention because the government defendants can adequately represent their interests.

In this Circuit, "there is an assumption of adequacy when the government is acting on behalf of a constituency that it represents. "In the absence of a very compelling showing to the contrary, it will be presumed that a state adequately represents its citizens when the applicant shares the same interest." *Arakaki*, 324 F.3d at 1086. According to Plaintiffs, there is no dispute that Defendants and Proposed Intervenors have identical objectives: defending the challenged sections from being found preempted by the FAA. This unity of objectives triggers the requirement that Proposed Intervenors must make a "very compelling" showing of the government's inadequacy of representation.

Plaintiffs argue that Proposed Intervenors cannot make a very compelling showing for several reasons: (1) there is no argument that government defendants are unwilling or incapable of making all

of CANHR's legal arguments; (2) there is no basis to suggest that the government defendants will change their position such that Proposed Intervenors "are left out in the cold;" (3) CANHR has not shown that they would offer any necessary elements to the proceeding that other parties would neglect; (4) the additional evidence CANHR attempts to provide regarding the "economic reality" or impact of limiting a patients' right to a jury trial injects an irrelevant policy debate into the purely legal question of whether the FAA preempts California's restrictions; and (5) if CANHR has additional factual information to offer, the parties may request leave to submit an amicus brief. (Doc. 42 at 11-14).

CANHR responds that while their interests are similar to the governments' interests; they are not identical. More specifically, Proposed Intervenors seek to obtain a ruling rejecting Plaintiffs' attempts to limit the rights of nursing home patients, whereas the State has an interest in protecting the entirety of the law. "This difference could create differing points of view regarding the litigation as a whole." (Doc. 36).

CANHR points to the Tenth Circuit where the Court recognized the distinction between a government's interest in its laws and the interests of individuals affected by the law. *See WildEarth Guardians v. U.S. Forest Serv*., 573 F.3d 992, 996 (10th Cir. 2009). There, the Court remarked:

> The government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of a particular member of the public merely because both entities occupy the same posture in the litigation. In litigating on behalf of the general public, the government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor. Government policy may shift. *Id.* at 996.

CANHR also argues that the government's position could change throughout litigation, potentially leaving Proposed Intervenors with no alternative forum in which they could mount a robust defense effectively leaving them "out in the cold." Finally, Proposed Intervenors are concerned that the government may have limited resources to adequately address Plaintiffs' suit.

The most important factor in determining the adequacy of representation is how the intervenor's interest compares with the interests of existing parties. 7C Wright, Miller & Kane, *Federal Practice and Procedure* § 1909, at 318 (2d ed. 1986). When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises.

*League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1305 (9th Cir. 1997). If the applicant's interest is identical to that of one of the present parties, a compelling showing should be required to demonstrate inadequate representation. 7C Wright, Miller & Kane, § 1909, at 318-19.

There is also an assumption of adequacy when the government and the applicant are on the same side. *City of Los Angeles*, 288 F.3d at 401-02. In the absence of a "very compelling showing to the contrary," it will be presumed that a state adequately represents its citizens when the applicant shares the same interest. *Arakaki*, 324 F.3d 1086; 7C Wright, Miller & Kane, § 1909, at 332. Where parties share the same ultimate objective, differences in litigation strategy do not normally justify intervention. *City of Los Angeles*, 288 F.3d at 402.

CANHR has not overcome the presumption that the government defendants will adequately represent its interests. First, based on the record before this Court, Defendants have demonstrated they are capable and willing to make all of CANHR's arguments. CANHR argues that it would present information on how arbitration agreements can delay or impede claims, diminish recovery, and have a substantial impact on elder abuse claims. CANHR's chief concern is that existing defendants may not make the identical arguments that rather than promote the PBOR, arbitration would have a chilling effect on PBOR claims due to the economic reality of the limited potential for recovery, the time delays on an aging population, and the cost requirements of arbitration. However, there is nothing to suggest that the government defendants are incapable or unwilling to present these policy arguments. The very statutes and regulations challenged were adopted based upon public policy reasons. In defending the legislation, the government defendants will necessarily defend on public policy grounds. While government defendants may be called upon to make policy arguments that Proposed Intervenors are also equipped to address; the only question the Court must resolve is whether existing defendants are capable and willing to make these arguments should it be necessary. *Id.* at 1087. The Court finds that the government defendants are capable and willing.

Next, the circumstances in this case are not similar to those which prompted holdings of inadequate representation by government defendants in other cases. Unlike the authority cited by CANHR, where the Court found that representation by the government defendant was inadequate, the Proposed Intervenors' interests in this case do not conflict with those of the existing defendants. *See*

*e.g. Citizens for Balanced Use v. Montana Wilderness Assoc.*, 647 F.3d 893, 898-899 (9th Cir. 2011) (Government defendants reluctantly limited the use of snowmobiles in a national forest. Conservation advocacy groups were allowed to intervene on the side of government defendants where government was simultaneously seeking to overturn the order limiting the use of snowmobiles that it had issued reluctantly and that it was now required to defend); *Idaho Farm Bureau Federation v. Babitt*, 58 F.3d 1392, 1398 (9th Cir. 1995) (Government defendant proposed that a certain species of snail be placed on the endangered species list but made little effort to actually list the species as endangered. Advocacy group was allowed to intervene because government defendants had delayed making a final decision over 7.5 years and took action only after proposed intervenors filed suit to compel government defendants to make a decision); *County of Fresno v. Andrus*, 622 F.2d 436, 439 (9th Cir. 1980) (intervention allowed where court observed that there was reason to doubt that the government defendant would fully protect the advocacy groups interest where the government defendant began its rulemaking only reluctantly after the advocacy group brought a law suit against it). Here, both the intervenors and the government defendants are aligned. Both seek to uphold the public policy underlying the legislation. Therefore, the government defendants will adequately represent Proposed Intervenors' interests.

Proposed Intervenors also cite *Lockyer v. United States*, for the proposition that intervention is warranted where the government's narrow interpretation of a statute conflicts with a broader interpretation argued by intervenors. 450 F.3d 436, 443-33 (9th Cir. 2006). Proposed Intervenors argue that they advocate for a broader interpretation of the California statutes than the government. As an example, they point to the PBOR which requires, among other things, that nursing facilities explicitly inform residents that they cannot waive certain rights and requires that arbitration agreements be separate from admission agreements. Cal. Code of Regs. tit. 22, § 72516(d). Proposed Intervenors argue that these regulations concern informed consent and not FAA preemption. In their suit, Plaintiffs challenge these specific regulations; however the government did not present arguments on why striking down these informed consent provisions would negatively impact the rights of nursing home residents and their ability to give informed consent. CANHR argues it must protect the interests of nursing home residents that fall outside of the scope of potential FAA preemption.

In *Lockyer*, the Court held that if a proposed intervenor argues that its interpretation of a contested statute differs from that of the government, "the proposed intervenor must demonstrate a likelihood that the government will abandon or concede a potentially meritorious reading of the statute." *Lockyer*, 450 F.3d at 444. The proposed intervenor in *Lockyer* satisfied this requirement because the government had actually advocated a narrow interpretation of the challenged statute in its brief, which contradicted the broad interpretation supported by the proposed intervenors. Proposed Intervenors compare their situation to *Lockyer*, but the government in that case was advocating for a limiting construction of the federal statute that was much narrower than advocated-for by the proposed intervenors. *Id.* at 444.

Unlike *Lockyer,* Proposed Intervenors have not presented convincing arguments that government defendants refuse to defend the validity of all of the challenged sections vigorously. The responsive pleadings filed by the government defendants fully respond to all of the statutory challenges posed by Plaintiffs. Further, Proposed Intervenors have not argued convincingly that the government defendants lack the resources to defend the legislation vigorously. Any lack of resources is speculative. To the extent that Proposed Intervenors have identified any difference in argument that Defendants did or will not make in this action, the Court finds that Proposed Intervenors should be granted leave to file amicus briefing to address issues, as discussed below.

For the foregoing reasons, the Court finds that Proposed Intervenors have failed to rebut the presumption that Defendants will represent Proposed Intervenors' interests in this action adequately. Therefore, Proposed Intervenors are not entitled to intervene as a matter of right.

**E. Procedurally Proper**

Finally, Plaintiffs also argue that the Proposed Intervenors failed to file a proposed answer in their motion for intervention and have therefore failed to meet the procedural requirements of Rule 24(c).

Plaintiffs' argument concerning Proposed Intervenors' failure to attach a proposed pleading is not persuasive. In the Ninth Circuit, if a proposed intervenor is content to stand on the existing pleading or describes the basis for intervention, attachment of a proposed pleading is unnecessary. *See Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1188 (9th Cir. 2009) ("We have made clear that

the failure to comply with the Rule 24(c) requirement for a pleading is a purely technical defect which does not result in the disregard of any substantial right. Courts, including this one, have approved intervention motions without a pleading where the court was otherwise apprised of the grounds for the motion") (citations and quotations omitted); *Munoz v. PHH Corp.*, 2013 U.S. Dist. LEXIS 106004, at *15 (E.D. Cal. July 26, 2013) (motion to intervene procedurally proper even though movants failed to attach their proposed pleading); *Dixon v. Cost Plus*, No. 12-cv-2721, 2012 U.S. Dist. LEXIS 90854 , 2012 WL 2499931, at *6 (N.D. Cal. June 27, 2012) ("A Rule 24(c) attachment is not required where ... the movant describes the basis for intervention with sufficient specificity to allow the district court to rule") (citations and quotations omitted).

Here, Plaintiffs were on notice as to the grounds for intervention which were detailed in Proposed Intervenors' motion to intervene. Further, Proposed Intervenors attached a copy of their proposed answer less than two weeks after their motion was filed, curing any procedural defect under Rule 24(c). Nevertheless, as explained above, Proposed Intervenors have not demonstrated their right to intervene as of right.

**2. Permissive Intervention**

Although Proposed Intervenors are not entitled to intervene as a matter of right pursuant to Rule 24(a), they may satisfy the requirements for permissive intervention pursuant to Rule 24(b). An applicant who seeks permissive intervention must demonstrate that "it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). "Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. Pro. 24(b)(3).

The Court exercises its discretion to deny permissive intervention. The intervention has the potential to impact the Scheduling Order adversely and delay the proceedings. As Plaintiffs stated at oral argument, Plaintiffs will need discovery and the time remaining on fact discovery expires shortly.

Further, at oral argument, Proposed Intervenors stated their desire to present evidence and argument on public policy underlying the statutes and regulation. The issue in this case is a legal issue: does the FAA preempt the California statutes and regulations? The "factual" development proposed by Proposed Intervenors does not aid in adjudication of a purely legal issue. The Court finds that while the Proposed Intervenors may have a unique point of view and expertise, intervention as a party will not necessarily facilitate resolution on the merits, but is likely to result in a delay in the proceedings and duplicative briefing, adding a layer of unwarranted procedural complexity. Proposed Intervenors will be granted leave to file an amicus brief to address the interpretation of the California statutes and regulations in light of the FAA.

**CONCLUSION**

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1. Proposed Intervenors' Motion to Intervene is DENIED (Doc. 36);

2. Proposed Intervenors, however, are GRANTED leave to file one amicus brief on the specific issues in this litigation. Such briefing shall be filed not later than twenty-one (21) calendar days before any dispositive motion hearing date set by either party. The length of the brief shall comply with the page limitations set in the Standing Order of the assigned judge.

IT IS SO ORDERED.

Dated: **August 27, 2013**

/s/ Barbara A. McAuliffe
UNITED STATES MAGISTRATE JUDGE