1
2
3
4
5          UNITED STATES DISTRICT COURT
6          EASTERN DISTRICT OF CALIFORNIA
7
8  VALLEY VIEW HEALTH CARE,          CASE NO. CV F 13-0036 LJO BAM
   INC., et al.,
9                                    **SUMMARY JUDGMENT DECISION AND
                                     JUDGMENT THEREON**
10                      Plaintiffs,  (Docs. 58, 60.)
11
12         vs.
13  RONALD CHAPMAN, M.D.,
    DIRECTOR OF THE CALIFORNIA
14  DEPARTMENT OF PUBLIC
    HEALTH, et al.,
15
16                      Defendants.
17  _____/
18
19
20         **PRELIMINARY STATEMENT TO PARTIES AND COUNSEL**
21         Judges in the Eastern District of California carry the heaviest caseload in the nation,
22  and this Court is unable to devote inordinate time and resources to individual cases and
23  matters.  This Court cannot address all arguments, evidence and matters raised by parties and
24  addresses only the arguments, evidence and matters necessary to reach the decision in this
25  order given the shortage of district judges and staff.  The parties and counsel are encouraged to
26  contact United States Senators Dianne Feinstein and Barbara Boxer to address this Court's
27  inability to accommodate the parties and this action.
28  / / /

                                     1

## INTRODUCTION

This action addresses the validity of California statutes and regulations to restrict skilled nursing facilities' ("SNFs'") arbitration of the Patient's Bill of Rights, California Health and Safety Code, §§ 1599, et seq.  Plaintiff SNFs and their nonprofit professional association seek summary judgment that the challenged statutes and regulations violate and are preempted by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, et seq.   Defendants California Department of Public Health and its director Ronald Chapman, M.D. (collectively the "Department") seek summary judgment on plaintiffs' declaratory relief and injunctive relief claims for failure to invoke this Court's subject matter jurisdiction and to allege a judiciable controversy given the absence of available FAA relief.  This Court considered the parties' respective cross-summary judgment motions on the record[1] without a hearing, pursuant to Local Rule 230(g).  For the reasons discussed below, this Court GRANTS plaintiffs summary judgment.

## BACKGROUND

### The Parties

Plaintiff California Association of Health Facilities ("CAHF") is a nonprofit association representing licensed SNFs and pursues this action on its behalf and as representative of its member SNFs.  Plaintiffs Valley View Health Care Inc. ("Valley View"), The Stonebrook Convalescent Center, Inc. ("Stonebrook"), Lifehouse Parkview Operations, LCC ("Lifehouse"), Beverly Healthcare – California, Inc. ("Beverly"), CF Modesto, LLC ("CF Modesto"), and Avalon Care Center – Merced Franciscan, L.L.C. ("Avalon") (collectively the

---

[1]       This Court carefully reviewed and considered the voluminous record, including all evidence, arguments, points and authorities, declarations, testimony, statements of undisputed facts and responses thereto, objections and other papers filed by the parties.  Except as otherwise noted, omission of reference to evidence, an argument, document, objection or paper is not to be construed to the effect that this Court did not consider the evidence, argument, document, objection or paper.  This Court thoroughly reviewed, considered and applied the evidence it deemed admissible, material and appropriate for summary judgment.  Given the parties' voluminous, repetitive and vexing objections, this Court will not devote its limited resources to the questionable exercise of ruling on or otherwise addressing the parties' dubious objections.  Moreover, this Court has considered the papers of non-parties California Advocates for Nursing Home Reform ("CANHR") and AARP and finds their stray points chiefly beyond the context of the core issues presented by the parties and thus unpersuasive.

"licensee plaintiffs") operate licensed SNFs in California and participate in Medicare and Medi-Cal programs.  CAHF serves as a statewide organization for long-term care providers, including SNFs, and has nearly 800 members, including each of the licensee plaintiffs.[2]

The Department monitors SNFs' compliance with applicable California laws and licensing and conducts SNF re-licensing surveys periodically.

### Challenged Statutes And Regulations

The California Patient's Bill of Rights sets forth "fundamental human rights which all patients shall be entitled to in a skilled nursing, intermediate care facility, or hospice facility." Cal. Health & Safety Code, § 1599.  Plaintiffs challenge California statutes and regulations which address arbitration of the Patient's Bill of Rights and which include California Health and Safety Code sections 1430(b) ("section 1430(b)") and 1599.81(d) ("section 1599.81(d)") and California Code of Regulations, Title 22, section 72516(d) ("section 72516(d)").[3]

Section 1430(b) provides in pertinent part:

> A current or former resident or patient of a skilled nursing facility . . . may bring a civil action against the licensee of a facility who violates any rights of the resident or patient as set forth in the Patients Bill of Rights . . ., or any other right provided for by federal or state law or regulation. . . . The licensee shall be liable for the acts of the licensee's employees. The licensee shall be liable for up to five hundred dollars ($500), and for costs and attorney fees, and may be enjoined from permitting the violation to continue. **An agreement by a resident or patient of a skilled nursing facility or intermediate care facility to waive his or her rights to sue pursuant to this subdivision shall be void as contrary to public policy.** (Bold added.)

California Health and Safety Code section 1599.81 ("section 1599.81") addresses a standard admission agreement and requirements of SNF admission agreements.  Section 1599.81(a) requires admission agreements with arbitration clauses to "clearly indicate that agreement to arbitration is not a precondition for medical treatment or for admission." Section 1599.81(b) requires arbitration clauses in "a form separate from the rest of the admission contract" and that such attachment "contain the signature of any applicant who agrees to

---

[2]       CAHF and the licensee plaintiffs will be referred to collectively as "plaintiffs."

[3]       Sections 1430(b), 1599.81(d) and 72516(b) will be referred to collectively as the "challenged arbitration laws."

arbitration." Section 1599.81(d) provides that if a contract for SNF admission "contains an arbitration clause, the contract attachment pertaining to arbitration shall contain notice that under Section 1430, the patient may not waive his or her ability to sue for violation of the Patient's Bill of Rights." Plaintiffs note that section 1599.81(d) requires arbitration agreements for SNFs to carve out claims based on the Patient's Bill of Rights.

Section 72516(d) provides:

> The licensee shall not present any arbitration agreement to a prospective resident as a part of the Standard Admission Agreement. Any arbitration agreement shall be separate from the Standard Admission Agreement and shall contain the following advisory in a prominent place at the top of the proposed arbitration agreement, in bold-face font of not less than 12 point type: **"Residents shall not be required to sign this arbitration agreement as a condition of admission to this facility, and cannot waive the ability to sue for violation of the Resident Bill of Rights."** (Bold in original.)

Plaintiffs characterize section 72516(d) to implement sections 1430(b) and 1599.81(d).

Plaintiffs note that during the rulemaking process that culminated in section 72516(d), CAHF submitted comments that section 72516(d) interferes with SNFs' use of arbitration and that the challenged arbitration laws are preempted by the FAA. In its August 2, 2011 Final Statement of Reasons as to then proposed Rule 72516(d), the Department noted that even if it agreed that section 1430(b) was preempted by the FAA, the Department "is prohibited from complying with this request by Article 3, Section 3.5 of the California Constitution," which prohibits a California administrative agency to declare a statute unenforceable or to refuse to enforce a statute because it is unconstitutional.

## Plaintiffs' Claims

Plaintiffs proceed on their Complaint for Declaratory and Injunctive Relief ("complaint") to allege that the challenged arbitration laws are preempted by the FAA and are void by prohibiting SNFs' arbitration agreements to cover claims arising out of the Patient's Bill of Rights. The complaint's (first) declaratory relief claim alleges that the challenged arbitration laws violate the FAA "as they impermissibly single out and discriminate against arbitration on a basis that is not applied equally to all contracts" to result in violation of plaintiffs' rights "by state law that precludes enforcement of arbitration agreements governed

by the FAA."   The complaint's (second) FAA violation claim alleges that the challenged arbitration laws violate the FAA by prohibiting "arbitration of a particular type of claim" and "by requiring nursing homes to advise residents that they may not waive their right to sue for violation of the Patient's Bill of Rights."   The complaint seeks declaratory relief that the challenged arbitration laws "are invalid, unlawful, and preempted by the FAA" and injunctive relief to preclude enforcement of the challenged arbitration laws.

## DISCUSSION

### Summary Judgment Standards

The parties effectively seek summary judgment as to the validity or invalidity of the challenged arbitration laws.

F.R.Civ.P. 56(a) permits a party to seek summary judgment "identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought."   "A district court may dispose of a particular claim or defense by summary judgment when one of the parties is entitled to judgment as a matter of law on that claim or defense." *Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st Cir. 1999).

Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.Civ.P. 56(a); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).   The purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.*, 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

To carry its burden of production on summary judgment, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Soremekun v. Thrifty Payless, Inc.*, 509 F.3d

978, 984 (2007) (moving party is able to prevail "by pointing out that there is an absence of evidence to support the nonmoving party's case"); *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). A "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial" to entitle the moving party to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).

When only a question of law is present, a court may resolve the matter by summary judgment. *Asuncion v. District Director of U. S. Immigration and Naturalization Service*, 427 F.2d 523, 524 (9th Cir. 1970). A court's ruling on preemption is a question of law. *See Contract Services Network, Inc. v. Aubry*, 62 F.3d 294, 297 (9th Cir.1995)

As discussed below, plaintiffs establish that they are entitled to summary judgment on their declaratory and injunctive relief claims.

## Overview Of The FAA

The FAA applies to written arbitration agreements. Provisions to arbitrate controversies arising out of transactions involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Ticknor v. Choice Hotels Intern., Inc.*, 265 F.3d 931, 936 (9th Cir. 2001), *cert. denied*, 534 U.S. 1133, 122 S.Ct. 1075 (2002). "In enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S.Ct. 852, 858 (1984). The FAA reflects an "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 631, 105 S.Ct. 3346 (1985). "The enactment establishes a strong federal policy in favor of the resolution of disputes through arbitration." *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3rd Cir. 2003). "[F]ederal law presumptively favors the enforcement of arbitration agreements." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178 (3rd Cir. 1999).

"When state law prohibits outright the arbitration of a particular type of claim, the

analysis is straightforward: The conflicting rule is displaced by the FAA." *AT&T Mobility LLC v. Concepcion,* __ U.S. __, 131 S.Ct. 1740, 1747 (2011).   "[E]ven generally applicable state-law rules are preempted if in practice they have a 'disproportionate impact' on arbitration or 'interfere[ ] with fundamental attributes of arbitration and thus create [ ] a scheme inconsistent with the FAA.'" *Mortensen v. Bresnan Communications, LLC,* 722 F.3d 1151, 1159 (9th Cir. 2013) (quoting *Concepcion,* __ U.S. __, 131 S.Ct. at 1747–48)).   The "FAA's purpose is to give preference (instead of mere equality) to arbitration provisions." *Mortensen,* 722 F.3d at 1160.

With these principles in mind, this Court turns to the parties' arguments against and supporting the challenged arbitration laws.

### Federal Question Jurisdiction

The complaint asserts subject matter jurisdiction under 28 U.S.C. § 1331 (federal question – "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States") and the Supremacy Clause.   Plaintiffs argue that they are entitled to assert federal question jurisdiction via the Supremacy Clause in that plaintiffs seek equitable relief from FAA-preempted state regulation --  the challenged arbitration laws.   The Department challenges subject matter jurisdiction in that neither the FAA nor Supremacy Clause create a federal question and plaintiffs lack standing to pursue their requested relief.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377, 114 S.Ct. 1673 (1994).   "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes*, 873 F. 2d 1221, 1225 (9th Cir. 1989).   The burden to establish federal jurisdiction "rests upon the party asserting jurisdiction." *Kokkonen,* 511 U.S. at 377, 114 S.Ct. 1673.

### *Standing*

To invoke this Court's jurisdiction, plaintiffs must establish their standing to pursue their declaratory and injunctive relief claims.   The constitutional requirements for standing

7

emanate from Article III, section 2 of the U.S. Constitution, which grants federal courts jurisdiction over "cases" and "controversies." *Kardules v. City of Columbus*, 95 F.3d 1335, 1346 (6th Cir. 1996). "It is the responsibility of the complainant clearly to [provide] facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and exercise of the court's remedial powers." *Warth v. Seldin*, 430 U.S. 490, 518, 95 S.Ct. 2197 (1975). To invoke standing, a plaintiff must allege "(a) a particularized injury (b) concretely and demonstrably resulting from defendant's action (c) which injury will be redressed by the remedies sought." *Bowker v. Morton*, 541 F.2d 1347, 1349 (9th Cir. 1976).

"At an irreducible minimum, Article III requires that the plaintiff show that he has personally suffered some actual or threatened injury as a result of defendant's illegal conduct . . . and that the injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision.'" *Fair v. U.S. Envir. Protection Agency*, 795 F.2d 851, 853 (9th Cir. 1986) (citation omitted; quoting *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 41, 96 S.Ct. 1917, 1924, 1925 (1975) (standing is a constitutional limitation of federal court jurisdiction to actual cases or controversies and absent a showing of standing, an exercise of federal court power would be inconsistent with Article III limitations)). "Pecuniary injury is a sufficient basis for standing." *Fair*, 795 F.2d at 853; *see Barlow v. Collins*, 397 U.S. 159, 163-164, 90 S.Ct. 832, 835-836 (1970).

"A suit brought by a plaintiff without Article III standing is not a "case or controversy," and "an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Community v. Bush*, 386 F.3d 1169,1174 (9th Cir. 2004). The burden of establishing standing elements "falls upon the party asserting federal jurisdiction." *Central Delta Water Agency v. United States*, 306 F.3d 938, 947 (9th Cir. 2002). The standing elements are "not merely pleading requirements" but are an "indispensable part of the plaintiff's case" and "must be supported at each stage of litigation in the same manner as any other essential element of the case." *Central Delta*, 306 F.3d at 947.

### The FAA And Supremacy Clause As Sources Of Federal Question Jurisdiction

The Department argues that the FAA's purpose is limited to enforce agreements to

8

arbitrate and that the FAA does not establish "an independent basis for subject matter jurisdiction." The FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University,* 489 U.S. 468, 478, 109 S.Ct. 1248 (1989). The FAA was designed "to make arbitration agreements as enforceable as other contracts, but not more so." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, n. 12, 87 S.Ct. 1801 (1967).

Although the FAA "creates federal substantive law requiring the parties to honor arbitration agreements, it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 or otherwise." *Southland Corp. v. Keating*, 465 U.S. 1, 16, n. 9, 104 S.Ct. 852 (1984). In *Moses H. Cone Memorial Hosp.,* 460 U.S. at 25, n. 32, 103 S.Ct. 927, the U.S. Supreme Court further explained:

> The Arbitration Act is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 (1976 ed., Supp. IV) or otherwise. Section 4 provides for an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute; hence, there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue. . . .

The Department further argues that "no federal question is raised under the Supremacy Clause," which "is not a source of federal private rights created by Congress."

The Supremacy Clause provides that "the Laws of the United States . . . shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. "[T]hat clause is not a source of any federal rights"; it "'secure [s]' federal rights by according them priority whenever they come in conflict with state law." *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 613, 99 S.Ct. 1905, 1913 (1979).

The Department argues that the Supremacy Clause cannot "constitutionalize claims that are fundamentally statutory" but merely "provides a choice of law or rule of decision, for parties who are properly before the Court." The Department continues that FAA rights "are

1   conferred and limited to only contracting parties who have an existing dispute involving an

2   arbitration contract governed by the FAA."   The Department urges rejection of plaintiffs'

3   "reliance on the Supremacy Clause, by itself, to create a cause of action that Congress itself has

4   not created."   *See Alexander v. Sandoval,* 532 U.S. 275, 286, 121 S.Ct. 1511 (2001) ("Like

5   substantive federal law itself, private rights of action to enforce federal law must be created by

6   Congress").

7          This Court does not view plaintiffs to use the FAA or Supremacy Clause as the toe hold

8   for subject matter jurisdiction.   As discussed directly below, plaintiffs challenge the

9   Department's interference of federal rights created under the FAA and which conflict with state

10  law.  Such an attempt to enforce federal rights opens this Court's doors to plaintiffs.

*Equitable Pre-Enforcement Challenge*

12         As a source of federal question jurisdiction, plaintiffs argue that they are entitled to

13  pursue equitable relief to prevent state officials' interference with plaintiffs' constitutional

14  rights.   Plaintiffs characterize their claims as a proper "pre-enforcement challenge" because

15  California SNFs "have largely (though not exclusively) substantially complied with the

16  Challenged Sections,[4] despite their questionable validity under the FAA, due to fear of

17  enforcement."

18         "[F]ederal courts have jurisdiction over suits to enjoin state officials from interfering

19  with federal rights."   *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 96, n. 14, 103 S.Ct. 2890

20  (1983); *see Ex parte Young*, 209 U.S. 123, 160-162, 28 S.Ct. 441, 454-455 (1908).  "A plaintiff

21  who seeks injunctive relief from state regulation, on the ground that such regulation is pre-

22  empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must

23  prevail, thus presents a federal question which the federal courts have jurisdiction under 28

24  U.S.C. § 1331 to resolve."   *Shaw*, 463 U.S. 85, 96, n. 14, 103 S.Ct. 2890.  The "declaratory

25  judgment procedure is an alternative to pursuit of the arguably illegal activity." *Steffel v.*

26  *Thompson*, 415 U.S. 452, 480, 94 S.Ct. 1209 (2007).  "Indeed, none of the Court's seminal

27

28         [4]      The parties refer to the challenged arbitration laws as the "Challenged Sections."

preemption cases casts any doubt on the presumptive availability of declaratory and injunctive relief under the Supremacy Clause; to the contrary, the Court has consistently assumed-without comment-that the Supremacy Clause provides a cause of action to enjoin implementation of allegedly unlawful state legislation." *Independent Living Center of Southern California, Inc. v. Shewry,* 543 F.3d 1050, 1055-1056 (9th Cir. 2008), *cert. denied,* 557 U.S. 920, 129 S.Ct. 2823 (2009).

Plaintiffs argue that despite the absence of Department enforcement actions against the licensee plaintiffs or CAHF members, plaintiffs may contest the challenged arbitration laws based on their fear of enforcement and their "self-censor" to enter with patients into arbitration agreements which no less than substantially comply with the challenged arbitration laws.

"A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat. Union,* 442 U.S. 289, 298, 99 S.Ct. 2301 (1979). But "[o]ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." *Pennsylvania v. West Virginia*, 262 U.S. 553, 593, 43 S.Ct. 658, 663 (1923).

"The justiciability problem that arises, when the party seeking declaratory relief is himself preventing the complained -- of injury from occurring, can be described in terms of standing (whether plaintiff is threatened with 'imminent' injury in fact 'fairly . . . trace[able] to the challenged action of the defendant,' *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)), or in terms of ripeness (whether there is sufficient 'hardship to the parties [in] withholding court consideration' until there is enforcement action, *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507 (1967). *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 128, n. 8, 127 S.Ct. 764 (2007).

In *MedImmune,* 549 U.S. at 128-129, 134, n. 12, 127 S.Ct. 764, the U.S. Supreme Court articulated a "coercion principle" to permit pre-enforcement challenges:

> Our analysis must begin with the recognition that, where threatened action by
> government is concerned, we do not require a plaintiff to expose himself to liability
> before bringing suit to challenge the basis for the threat—for example, the

constitutionality of a law threatened to be enforced. The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction. For example, in *Terrace v. Thompson*, 263 U.S. 197, 44 S.Ct. 15, 68 L.Ed. 255 (1923), the State threatened the plaintiff with forfeiture of his farm, fines, and penalties if he entered into a lease with an alien in violation of the State's anti-alien land law. Given this genuine threat of enforcement, we did not require, as a prerequisite to testing the validity of the law in a suit for injunction, that the plaintiff bet the farm, so to speak, by taking the violative action. . . . . Likewise, in *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), we did not require the plaintiff to proceed to distribute handbills and risk actual prosecution before he could seek a declaratory judgment regarding the constitutionality of a state statute prohibiting such distribution. . . . As then-Justice Rehnquist put it in his concurrence, "the declaratory judgment procedure is an alternative to pursuit of the arguably illegal activity." . . . In each of these cases, the plaintiff had eliminated the imminent threat of harm by simply not doing what he claimed the right to do (enter into a lease, or distribute handbills at the shopping center). That did not preclude subject-matter jurisdiction because the threat-eliminating behavior was effectively coerced. . . . The dilemma posed by that coercion—putting the challenger to the choice between abandoning his rights or risking prosecution—is "a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 152, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).  (Select citations omitted.)

Plaintiffs further argue that lack of current enforcement and the Department's disavowal of enforcement fail to remove a "realistic" danger of enforcement.  *See Virginia v. American Booksellers Ass'n,* 484 U.S. 383, 393, 108 S.Ct. 636, 643 (1988) ("[w]e are not troubled by the pre-enforcement nature of this suit. . . .We conclude that plaintiffs have alleged an actual and well-founded fear that the law will be enforced against them. Further, the alleged danger of this statute is, in large measure, one of self-censorship; a harm that can be realized even without actual prosecution"); *San Francisco County Democratic Cent. Committee v. Eu,* 826 F.2d 814, 822 (9th Cir.1987) (lack of enforcement disregarded when "plaintiffs' uncontroverted affidavits show that they have consistently, if reluctantly, obeyed the statutes in conducting party affairs"); *Lopez v. Candaele*, 630 F.3d 775, 788 (9th Cir. 2010) ("the government's disavowal [of enforcement] must be more than a mere litigation position"); *Vermont Right to Life Committee, Inc. v. Sorrell,* 221 F.3d 376, 383 (2nd Cir. 2000) (although State lacks intention to sue, "there is nothing that prevents the State from changing its mind. It is not forever bound, by

estoppel or otherwise, to the view of the law that it asserts in this litigation"); *see also Mobil Oil Corp. v. Attorney General of the Commonwealth of Virginia,* 940 F.2d 73, 76 (4th Cir.1991) (plaintiff has standing where "the Attorney General has not . . . disclaimed any intention of exercising her enforcement authority"); *KVUE, Inc. v. Moore,* 709 F.2d 922, 930 (5th Cir.1983) (plaintiff has standing where "[t]he state has not disavowed enforcement"), *aff'd*, 465 U.S. 1092, 104 S.Ct. 1580 (1984).

### *Danger Of Enforcement Of Challenged Arbitration Laws*

Plaintiffs contend that the licensee plaintiffs and CAHF members are subject to enforcement of the challenged arbitration laws and laws that compel the Department to inspect and enforce such requirements against SNFs in that:

1.      The Department assesses compliance with the challenged arbitration laws with re-licensure inspections at least biannually;

2.      Department official Cheryl Gordon ("Ms. Gordon")[5] testified in her deposition that the Department as to section 72516(d) violations is authorized "to take enforcement actions," including investigation and issuing a deficiency or citation, with a consumer or related complaint or SNF self-reporting;

3.      SNFs are subject to Department citations, which the Department is obligated to pursue for SNF violations of law or regulations; and

4.      The Department adopted section 72516(d) knowing it was subject to an FAA preemption challenge.

Plaintiffs further note that the licensee plaintiffs and CAHF's members face "private enforcement by residents, based on the voluminous section 1430(b) litigation between SNFs and their residents."

The Department downplays the danger of enforcement of the challenged arbitration laws in that none of the licensee plaintiffs has been subjected to:

1.      Discipline or administrative sanctions based on their particular arbitration

---

[5]      Ms. Gordan is the chief of the Policy and Enforcement Branch of the Department's Licensing and Certification Program.

agreements;

2.      Citation or penalty arising from Department enforcement of the challenged arbitration laws;

3.      License suspension or revocation arising from Department enforcement of the challenged arbitration laws; or

4.      Suspension or termination of certification under Medicare or Medi-Cal programs for failure to comply with the challenged arbitration laws.

The Department further notes that CAHF is unaware that any of its SNF members have been subject to similar discipline or penalty.

The Department argues that plaintiffs lack sufficient injury to invoke this Court's jurisdiction based on the challenged arbitration laws' existence. "The mere existence of a statute, which may or may not ever be applied to plaintiffs, is not sufficient to create a case or controversy within the meaning of Article III." *Stoianoff v. Montana*, 695 F.2d 1214, 1223 (9th Cir.1983). The Department holds plaintiffs to demonstrate a "genuine threat of imminent prosecution" under the challenged arbitration laws. *See San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996).

The Department points to the absence of "history or threat of prosecution" based on the challenged arbitration laws in that:

1.      Section 1430(b) is not subject to the Department's oversight duties because it creates only a private right of action for residents/patients;

2.      The Department does not currently enforce section 1599.81(d) for SNFs which are required to use the Standard Admissions Agreement; and

3.      The Department does not inspect for compliance with the challenged arbitration laws as part of its relicensing survey inspections.

The Department concludes there is no "realized dispute between the parties."

Despite the Department's claims of non-enforcement, the challenged arbitration laws

///

///

14

remain effective and in turn subject to enforcement.[6]  Notwithstanding the FAA and its application, section 1430(b) effectively precludes arbitration of Patient's Bill of Rights claims by declaring as void agreements to arbitrate such claims.  Plaintiffs are entitled to test whether the challenged arbitration laws interfere with federal rights despite the absence of imminent prosecution in that the record reflects that plaintiffs have self-policed and attempted no less than to comply substantially with the challenged arbitration laws despite issues as to their validity.  Plaintiffs' problem is compounded by the Department's awareness of the FAA-preemption issue and failure to take meaningful action to address head on or reconcile the issue in the absence of this litigation.  The Department's ambivalent position on the challenged arbitrations law creates no less than confusion and uncertainty as to how SNFs should address the challenged arbitration laws to further warrant resolution of plaintiffs' claims.  Moreover, there is no evidence that the Department will continue to refrain to enforce the challenged arbitration laws, which remain available to patients as private parties to base claims against SNFs.

### *SNFs' Coerced Behavior*

Plaintiffs note that rather than disobey the challenged arbitration laws and "out of fear of enforcement," the licensee plaintiffs and CAHF members have given up "their rights to enter into voluntary, comprehensive arbitration agreements with residents under the FAA" in that:

1.      Licensee plaintiff CF Modesto executed arbitration agreements with its residents to comply with the challenged arbitration laws:

2.      CAHF has made available to members a model arbitration agreement that no less than substantially complies with the challenged arbitration laws, and which licensee plaintiffs Valley View and Lifehouse use with limited modification; and

3.      Licensee plaintiffs Beverly and Avalon use arbitration agreements which substantially comply with the challenged arbitration laws.

Plaintiffs further note that licensee plaintiff Stonebrook has used an arbitration agreement

---

[6]      In fact, non-parties CANHR and AARP argue that the licensee plaintiffs must comply with section 1430(b) as a condition to their licensing and receipt of funds through California programs.

which does not reference the challenged arbitration laws or except section 1430(b) claims and has a "concrete plan" not to comply with the challenged arbitration laws.  Plaintiffs conclude that "in absence of any fear associated with the enforcement of the Challenged Sections or if the Challenged Sections were invalidated," the licensee plaintiffs would not intend to comply with the challenged arbitration laws and CAHF would intend to make available to members a model arbitration agreement that did not comply with the challenged arbitration laws.

The Department notes plaintiffs' ability to contract with residents to arbitrate claims involving the Patient's Bill of Rights, especially considering plaintiffs' admission to enter into arbitration agreements covering claims, including Patient's Bill of Rights claims.   The Department challenges the licensee plaintiffs' standing in that plaintiffs "have not demonstrated that the arbitration agreements are in fact prohibited, that the Challenged Sections have been enforced against them, or that they face an immediate threat of such prohibition or enforcement."

The record reveals that the challenged arbitration laws have influenced and guided plaintiffs' handling of admission agreements and arbitration attempts although plaintiffs contest the challenged arbitration laws' validity.  Without court resolution of the issues presented here, plaintiffs' utilization of federal rights will remain uncertain to subject plaintiffs to injury in the form of unused rights to promote arbitration under the FAA.  Moreover, given the effects of the challenged arbitration laws, the Department fails to substantiate plaintiffs' ease to arbitrate Patient's Bill of Rights claims.  The record reflects the opposite.  In short, plaintiffs establish this Court's subject matter jurisdiction to resolve their declaratory and injunctive relief claims.

## CAHF's Standing

CAHF contends that it has standing to pursue this action on behalf of itself and its members.

### CAHF's Associational Standing On Behalf Of Members

"An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the

16

participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 181, 120 S.Ct. 693 (2000).

To support its standing for its members, CAFH argues that:

1.      Each CAHF SNF member faces risk of administrative action given the Department's power to enforce the challenged arbitration laws;

2.      CAHF seeks to protect interests germane to its purpose, including support for its members through lobbying and advocacy in legislative, regulatory and judicial forums and assistance and guidance as to arbitration agreements; and

3.      The complaint asserts claims which do not require participation of individual CAHF members, *see Columbia Basin Apt. Ass'n v. City of Pasco*, 268 F.3d 791, 799 (9th Cir. 2001) (because declaratory and injunctive relief "do not require individualized proof," plaintiff landlord association satisfied standing); *Alaska Fish & Wildlife Fed'n & Outdoor Council, Inc. v. Dunkle*, 829 F.2d 933, 938 (9th Cir.1987) ("[b]ecause the [organization] seeks declaratory and prospective relief rather than money damages, its members need not participate directly in the litigation").

The Department argues that CAHF lacks associational standing in that:

1.      The licensee plaintiffs are not subject to enforcement of the challenged arbitration laws;

2.      CAHF is unaware of any SNF member's suspension or termination of certification under Medicare or Medi-Cal for failure to satisfy the challenged arbitration laws; and

3.      CAHF is unaware of any SNF member's notification of an enforcement action for failure to comply with the challenged arbitration laws.

The Department concludes that CAHF's standing fails in the absence of evidence to support standing of any CAHF member, including the licensee plaintiffs.

The Department offers no meaningful challenge to CAHF's associational standing. CAHF is an association which represents SNFs and pursues litigation and other advocacy for its SNF members.  As discussed above, the licensee plaintiffs and CAHF's SNF members have

standing to contest the challenged arbitration laws to likewise cloak their association CAHF with associational standing.   CAHF properly pursues declaratory and injunctive relief, not matters requiring individualized proof, such as monetary damages.   CAHF has associational standing to proceed in this action.

### CAHF's Organizational Standing On Its Own Behalf

"[O]rganizations are entitled to sue on their own behalf for injuries they have sustained." *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 379, n. 19, 102 S.Ct. 1114 (1982). An organization may establish a sufficient injury in fact, and in turn standing, "if it substantiates by affidavit or other specific evidence that a challenged statute or policy frustrates the organization's goals and requires the organization 'to expend resources in representing clients they otherwise would spend in other ways.'" *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach,* 657 F.3d 936, 943 (9th Cir. 2011) (quoting *El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review*, 959 F.2d 742, 748 (9th Cir.1992)); *La. ACORN Fair Hous. v. LeBlanc*, 211 F.3d 298, 305 (5th Cir.2000) ("an organization could have standing if it had proven a drain on its resources resulting from counteracting the effects of the defendant's actions").   But "standing must be established independent of the lawsuit filed by the plaintiff." *Walker v. City of Lakewood*, 272 F.3d 1114, 1124 n. 3 (9th Cir. 2001), *cert. denied*, 535 U.S. 1017, 122 S.Ct. 1607 (2002).

Plaintiffs argue that CAHF has suffered and will suffer injury "from the drain on its resources from both diversion of its resources and frustration of its mission."   Plaintiffs note that independent of this litigation, CAHF provides technical assistance and guidance to members and prepares model forms, including a model arbitration agreement.   Current CAHF legislative consultant and former legislative affairs director Nancy C. Reagan ("Ms. Reagan") states in her declaration that:

1.   "CAHF has diverted resources from other member benefits and services to undertake investigation and analyses into the legality of these provisions [challenged arbitration laws] and the preemptive effect of the Federal Administrative [Act] to provide technical assistance and guidance to its members related to arbitration issues";

2.      "CAHF's ability to provide technical assistance and guidance to its members is impaired due to the lack of clarity of the legality of the Challenged Sections and the preemptive effect of the Federal Arbitration [Act]; and

3.      The Department's "treatment of arbitration agreements encompassing Section 1430(b) claims affects and may affect the enforceability of the CAHF model arbitration agreement, when used by CAHF members."

Plaintiffs note that CAHF has suffered injury from lobbying and advocating in legislative, regulatory and judicial forums for the preemptive effect of the FAA and invalidity of the challenged arbitration laws.

The Department challenges CAHF's organizational standing in the absence of an identified dispute over an arbitration agreement or a particularized harm.  The Department characterizes plaintiffs to "rest on their perceived threat of enforcement, though they have no evidence that the challenged sections have ever been previously enforced against them."

CAHF properly asserts its organizational standing in this action.  CAHF's goals include minimizing its members' exposure to costly litigation by promoting arbitration to which CAHF has devoted its resources to address, analyze and contest the challenged arbitration laws. CAHF has established its diversion of assets and efforts from its other functions and goals to tackle the challenged arbitration laws.  The Department fails to substantiate its challenge to CAHF's organizational standing.

**FAA Preemption Of The Challenged Arbitration Laws**

Plaintiffs contest the challenged arbitration laws as in violation of the FAA, invalid under the Supremacy Clause and thus preempted.

*Interstate Commerce*

The FAA applies to any "contract evidencing a transaction involving commerce" which contains an arbitration clause.  *Erickson v. Aetna Health Plans of California, Inc.,* 71 Cal.App.4th 646, 650, 84 Cal.Rptr.2d 76 (1999) (citing 9 U.S.C. § 2).  "Commerce" for purposes of FAA coverage "is to be broadly construed so as to be coextensive with congressional power to regulate under the Commerce Clause."  *Foster v. Turley*, 808 F.2d 38,

40 (10th Cir. 1986); *see Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 273-274, 115 S.Ct. 834 (1995) ("we conclude that the word 'involving' is broad and is indeed the functional equivalent of 'affecting'").

      Plaintiffs note that the licensee plaintiffs and CAHF SNF members entered into written arbitration and admission agreements to arbitrate disputes in interstate commerce given their:

    1.     Use of express language invoking the FAA in their arbitration agreements;

    2.     Participation in and receipt of revenues from Medicare and Medi-Cal programs;

    3.     Purchase of goods and services from vendors outside California;

    4.     Advertisement to out-of-state residents through websites;

    5.     Provision of services to non-California residents;

    6.     Transactions with financial institutions outside California; and

    7.     Use of U.S. mail, telephone lines, wireless networks, and internet connections to conduct business.

Plaintiffs note that licensee plaintiffs Stonebrook and Avalon are out-of-state corporations operating California SNFs.

      Turning to revenues, plaintiffs point out that most revenues of the licensee plaintiffs and CAHF SNF members are derived from Medicare and Medi-Cal in that:

    1.     In 2012, the licensee plaintiffs received 10-18 percent of their total revenues from Medicare and 25-68 percent from Medi-Cal; and

    2.     Approximately 98 percent of CAHF SNF members participated in Medicare and/or Medi-Cal and received more than $2.5 billion from Medicare in 2011 and more than $2.9 billion from Medi-Cal in 2011.

      Plaintiffs note that the demands to provide 24-hour care efficiently and economically require SNFs to "avail themselves to a vast array of out-of-state vendors for elements of care and operation, such as medical supplies, diapers, clothing, beds, resident alarms, computer software, laundry services, therapy services, business supplies, durable medical equipment, and mattresses.   As such, plaintiffs conclude that the arbitration agreements of the licensee plaintiffs and CAHF SNF members cover claims arising out of interstate commerce.

The Department asserts that there is no involvement of interstate commerce in the absence of a "specific contract dispute at issue for analysis" to render "speculative" plaintiffs' argument that "the FAA covers any and all SNF agreements."

The Department raises no legitimate dispute whether the issues at stake here involve interstate commerce.  The record demonstrates that the licensee plaintiffs and CAHF SNF members engage in interstate commerce and that claims arising out of their patient care address interstate commerce given their use and provision of goods and services and receipt of revenues.

### Supremacy Clause

The Supremacy Clause provides that "the Laws of the United States . . . shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2.  A "state law that 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress' is preempted by the Supremacy Clause."  *Mortensen*, 722 F.3d at 1157 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399 (1941)).

"As federal substantive law, the FAA preempts contrary state law." *Mortensen*, 722 F.3d at 1158.  Nonetheless, the FAA's preemption power has an exception, via the 9 U.S.C. § 2 savings clause, in that it does not require the enforcement of arbitration agreements on "such grounds as exist at law or in equity for the revocation of any contract." *Mortensen*, 722 F.3d at 1158.  "This savings clause preserves generally applicable contract defenses, such as fraud, duress, or unconscionability, and ensures that they are not preempted." *Mortensen*, 722 F.3d at 1158.

Despite the savings clause's potential to avoid arbitration, the U.S. Supreme Court "has been moved to step in and stop some efforts to avoid FAA preemption." *Mortensen*, 722 F.3d at 1158.  "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *Concepcion*, __ U.S. __, 131 S.Ct. 1740, 1747.  "Any general state-law contract defense, based in unconscionability or otherwise, that has a disproportionate effect on arbitration is displaced by the FAA." *Mortensen*, 722 F.3d at 1159.

1       Similar to its challenge to subject matter jurisdiction, the Department challenges

2 plaintiffs' reliance on the FAA and Supremacy clause to contest the challenged arbitration laws

3 in the absence of a personal or property right arising from the FAA or Supremacy Clause to

4 support a federal claim.  The Department points to the FAA's limited relief as to "contracting

5 parties to an existing contract."

6       The Department further challenges plaintiffs' "implied conflict" preemption arising

7 from inability to satisfy both federal and state law.  "Even where Congress has not completely

8 displaced state regulation in a specific area, state law is nullified to the extent that it actually

9 conflicts with federal law."  *Fidelity Federal Sav. and Loan Ass'n v. de la Cuesta,* 458 U.S.

10 141, 153, 102 S.Ct. 3014 (1982).  Such a conflict arises when "compliance with both federal

11 and state regulations is a physical impossibility," *Florida Lime & Avocado Growers, Inc. v.*

12 *Paul*, 373 U.S. 132, 142-143, 83 S.Ct. 1210 (1963), or when state law "stands as an obstacle to

13 the accomplishment and execution of the full purposes and objectives of Congress," *Hines v.*

14 *Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399 (1941).  The Department argues that the challenged

15 arbitration laws present no inability to comply with both federal and state law in that:

16      1.    The licensee plaintiffs are able to enter into arbitration agreements with SNF

17 patients to arbitrate all claims, including claims arising from the Patient's Bill of Rights;

18      2.    The Department has issued no written interpretation under the challenged

19 arbitration laws that SNFs are unable to enter into valid arbitration agreements with SNF

20 patients to arbitrate Patient's Bill of Rights claims;

21      3.    Section 1430(b) exceeds the Department's oversight as it provides a private

22 right of action for patients to enforce the Patients' Bill of Rights; and

23      4.    The Department does not inspect for compliance of sections 1599.81(d) or

24 72512(d) as part of its relicensing survey inspections.

25      The Department continues that the challenged arbitration laws "address concerns that

26 attend to potential contracts of adhesion in contracts for admissions to SNFs where an infirmed

27 or ill patient may not have the same bargaining power as SNFs.  To that end, section 1430(b)

28 "is not a regulatory statute . . . but rather confers a private right of action with a specific

monetary entitlement for the violation of the rights of a resident of a skilled nursing facility as set forth in the Patient's Bill of Rights." *Shuts v. Covenant Holdco LLC,* 208 Cal.App.4th 609, 620, 145 Cal.Rptr.3d 709 (2012). The Department concludes that "there is no support that the Legislature intended to prohibit arbitration of Bill of Rights claims."

Section 1430(b) empowers SNF patients to sue for violation of the Patient's Bill of Rights but voids an agreement to waive such a civil lawsuit. Plaintiffs characterize section 1430(b) as a "categorical rule prohibiting arbitration of a particular type of claim, and that [such] rule is contrary to the terms and coverage of the FAA." *Marmet*, __ U.S. __, 132 S.Ct. at 1204. Plaintiffs are correct as to section 1430(b)'s last sentence, which effectively precludes arbitration of Patient's Bill of Rights claims. Arbitration of such claims requires the parties' agreement. Under Section 1430(b), parties are able to reach no more than a void agreement to arbitrate Patient's Bill of Rights claims. Section 1430(b) precludes arbitration of Patient's Bill of Rights claims by voiding agreements to arbitrate such claims, prohibits outright arbitration of a particular claim, and disproportionately impacts arbitration.[7]

As noted above, the trend of the U.S. Supreme Court and Ninth Circuit is to favor arbitration. Section 1430(b)'s last sentence effectively "prohibits outright arbitration" of Patient Bill of Rights claims and as a "conflicting rule is displaced by the FAA." *Concepcion*, __ U.S. __, 131 S.Ct. at 1747. Section 1430(b)'s last sentence violates and is preempted by the FAA as an obstacle to accomplishment and execution of FAA purposes.

Section 1599.81(d) requires notice that under section 1430(b), a patient cannot waive ability to sue for a Patient's Bill of Rights violation. Section 72516(d) requires arbitration agreements to advise patients that "they cannot waive ability to sue" for Patient's Bill of Rights violations. Plaintiffs contend that since sections 1599.81(d) and 72516(d) require notice of

---

[7]     Based on a Department of Health & Human Services January 9, 2003 memorandum, non-parties CANHR and AARP suggest that the Medicaid program requires deference to California law on arbitration. However, the memorandum precedes recent evolution of precedent favoring arbitration and notes that arbitration is "an issue between the resident and nursing home." This Court agrees that the ability to arbitrate claims is an issue between a resident and SNF but that the challenged arbitration laws preclude the parties to even attempt to agree to arbitrate Patient's Bill of Rights claims. Moreover, CANHR and AARP's claims that plaintiffs "relinquished their right" to seek arbitration are unavailing given that nothing meaningfully suggests that plaintiffs waived rights to enforce their federal rights or to contest the challenged arbitration laws.

unlawful restrictions on arbitration agreements, they are FAA preempted as derivative of section 1430(b).   Again, plaintiffs are correct to the extent that sections 1599.81(d) and 72516(d) effectuate section 1430(b)'s last sentence to preclude arbitration of Patient's Bill of Rights claims.   Sections 1599.81(d) and 72516(d) require notice of invalid arbitration preclusion of section 1430(b)'s last sentence and stand or fall with section 1430(b)'s last sentence.   Sections 1599.81(d) and 72516(d) fall as contrary to the FAA to the extent that they require notice of the bar on arbitration of Patient's Bill of Rights claims.   Since the scope of plaintiffs' claims are limited to arbitration preclusion, this Court neither rules on nor addresses the remaining text or effect of the challenged arbitration laws.

**Declaratory Relief**

Plaintiffs contend that they are entitled to declaratory relief that the challenged arbitration laws are "invalid, unlawful, and preempted by the FAA."

The Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201, 2202, provides in pertinent part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.   Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. §2201(a).

A DJA action requires a district court to "inquire whether there is a case of actual controversy within its jurisdiction." *American States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994).   When addressing a declaratory relief claim, "federal courts must take care to ensure the presence of an actual case or controversy, such that the judgment does not become an unconstitutional advisory opinion." *Rhoades v. Avon Products, Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007).

Declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Bilbrey*

24

*by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir.1984).   As to a controversy to invoke declaratory relief, the question is whether there is a "substantial controversy, between parties having adverse legal rights, or sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512 (1941).   The U.S. Supreme Court has further explained:

> A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. . . . The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240-241, 57 S.Ct. 461, 464 (1937) (citations omitted).

A declaratory relief action "brings to the present a litigable controversy, which otherwise might only be tried in the future." *Societe de Conditionnement v. Hunter Eng. Co., Inc.*, 655 F.2d 938, 943 (9th Cir. 1981).

Plaintiffs note establishment of an actual controversy in that the licensee plaintiffs and CAHF members "are forced to comply with the invalid Challenged Sections or face enforcement" by the Department.   Plaintiffs point out that their requested declaratory relief will clarify licensee plaintiffs' and CAHF members' ability to enter into arbitration agreements covering the Patient's Bill of Rights claims.

The parties differing views as to the viability of the challenged arbitration laws demonstrates an actual controversy.   Plaintiffs' requested declaratory relief clarifies the legality and enforcement of the challenged arbitration laws and in turn the parties' legal relations. Plaintiffs' requested declaratory relief further removes uncertainty as to viability and enforcement of the challenged arbitration laws.   In short, plaintiffs are entitled to declaratory relief that the challenged arbitration laws are invalid, unlawful and preempted by the FAA.

## Injunctive Relief

Plaintiffs seek injunctive relief to preclude enforcement of the challenged arbitration

laws.  The Department argues that injunctive relief is unavailable in the absence of irreparable injury.

A court may issue permanent injunctive relief prior to "trial on the merits, if there is no genuine issue of material fact to try. There is nothing novel about a permanent injunction issued on summary judgment rather than after trial. Such a procedure comports with Federal Rule of Civil Procedure 56." *Continental Airlines, Inc. v. Intra Brokers, Inc.,* 24 F.3d 1099, 1102 (9th Cir. 1994).

"To be entitled to a permanent injunction, the party seeking the injunction must actually succeed on the merits." *Gathright v. City of Portland*, 482 F.Supp.2d 1210, 1214 (D. Or. 2007) (citing *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546, n. 12, 107 S.Ct. 1396 (1987)).  Irreparable injury is required for preliminary injunctions, but once actual success on the merits has been established, "a party is entitled to relief as a matter of law irrespective of the amount of irreparable injury which may be shown." *Western Systems, Inc. v Ulloa*, 958 F.2d 864, 872 (9th Cir. 1992). "[I]rreparable injury is not an independent requirement for obtaining a permanent injunction [as opposed to a preliminary injunction or temporary restraining order]; it is only one basis for showing the inadequacy of the legal remedy." *Continental Airlines*, 24 F.3d at 1102.

The party seeking a permanent injunction "must also show that there is no adequate remedy at law." *Gathright*, 482 F.Supp.2d at 1214 (citing *Continental Airlines*, 24 F.3d at 1102.  "If there is the possibility of future wrongful conduct, a legal remedy is inadequate." *Gathright*, 482 F.Supp.2d at 1214 (citing *Orantes–Hernandez v. Thornburgh*, 919 F.2d 549, 564 (9th Cir.1990)).

Plaintiffs argue they are entitled to enjoin enforcement of the challenged arbitration laws in that they lack an adequate legal remedy given their compulsion to choose between complying with the challenged arbitration laws or risking administrative action to enforce the challenged arbitration laws against plaintiffs.  Plaintiffs contend that potential litigation from SNF residents, in absence of an injunction, demonstrates the inadequacy of a legal remedy. *See Bitterman v. Louisville & Nashville R.R. Co.*, 207 U.S. 205, 225, 28 S.Ct. 91 (1907) ("the

26

multiplicity of suits necessarily to be engendered if redress was sought at law, all establish the inadequacy of a legal remedy and the necessity for the intervention of equity").

Apparently relying on temporary restraining order or preliminary injunction principles, the Department holds plaintiffs to demonstrate a "likelihood of substantial and immediate irreparable injury." The Department characterizes plaintiffs' alleged injury as speculative. The Department cautions restraint to issue an injunction against the Department in absence of great and immediate irreparably injury to plaintiffs.

Plaintiffs have demonstrated success on the merits of their claims to render unnecessary evaluation of the issue of irreparable injury. The Department offers no meaningful challenge to plaintiffs' contention that they lack an adequate legal remedy. As discussed above, the record demonstrates that plaintiffs have taken significant action to respond to, address and substantially comply (at least in part) with the invalid challenged arbitration laws. Plaintiffs are entitled to enjoin the Department to enforce the challenged arbitration laws.

### Res Judicata/Collateral Estoppel

#### *The Parkside Litigation*

The Department contends that plaintiffs are barred by res judicata and/or collateral estoppel to litigate the arbitration waiver issues involved here based on CAHF's pursuit, as an organizational plaintiff, of a San Diego County Superior Court action entitled *Parkside Special Care Center, et al. v. Sandra Shewry, Director of the California Department of Health Services, et al.* (*Parkside*). In *Parkside,* CAHF and several SNFs challenged California Health & Safety Code section 1599.61 ("section 1599.61"), which mandated, at the time of the *Parkside* litigation, SNFs' use of the former Standard Admission Agreement ("SSA I") prepared by the California Department of Health Services ("DHS"). The *Parkside* plaintiffs challenged section 1599.61, its implementing regulations, and in turn the SSA I as violating due process and equal protection. The *Parkside* Superior Court Judge issued an August 10, 2006 order which touched on arbitration agreements: "As for the implementing regulations' requirement that the arbitration notice be in bold face font, this requirement is consistent with California law and is not a result of the Department's arbitrary, capricious, or unreasonable

action." The subsequent March 21, 2007 writ of mandate did not address arbitration.

Prior to the writ of mandate, DHS issued its September 29, 2006 All Facilities Letter 06-30, which stated:

> As a result of the court order issued August 10, 2006, in *Parkside* . . ., the use of the required Standard Admission Agreement [SAA I] for skilled nursing facilities . . . will be suspended until Sections 72516 and 73518 of Title 22 of the California Code of Regulations that adopted the Standard Admission Agreement are revised to conform to the court order. Consequently, facilities may use any admission agreement that conforms to the appropriate statutes. Licensing and Certification will not enforce section 72516 and 73518 of Title 22 of the California Code of Regulations that require the use of the Standard Admission Agreement until those regulations are amended and revised to conform to the court order.

The Department contends that this action "again seeks to invalidate the very 'waiver language' at issue in the *Parkside* litigation" to entitle the Department to invoke claim or issue preclusion.

### *Res Judicata*

"To determine the preclusive effect of a state court judgment, federal courts look to state law." *Intri-Plex Technologies, Inc. v. The Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007). "Whether a prior state court judgment precludes relitigation of an identical claim in federal court depends on the preclusion rules of the state." *Gupta v. Thai Airways Int'l, Ltd.*, 487 F.3d 759, 765 (9th Cir. 2007).

"Res judicata" is "the preclusive effect of a final judgment on the merits. Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." *Mycogen Corp. v. Monsanto Co.*, 28 Cal.4th 888, 896-897, 123 Cal.Rptr.2d 432 (2002). Res judicata "precludes parties or their privies from relitigating a cause of action that has been finally determined by a court of competent jurisdiction." *Rice v. Crow*, 81 Cal.App.4th 725, 734, 97 Cal.Rptr.2d 110 (2000) (dismissal of a California superior court complaint with prejudice is a final judgment on merits). "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 467, n. 6, 102 S.Ct. 1883 (1982).

Res judicata serves "the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645 (1979). Res judicata "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411 (1980).

The U.S. Supreme Court has further explained the "general rule of res judicata":

> The general rule of res judicata applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' . . . The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment.

*C.I.R. v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715 (1948) (citation omitted).

However, the res judicata doctrine, under California law, is not inflexible:

> . . . the doctrine of res judicata does not necessarily preclude all future actions with regard to continuing conduct simply because the previous action sought prospective relief. The doctrine of res judicata extends only to the facts and conditions as they existed at the time the judgment was rendered, and to the legal rights and relations of the parties as fixed by the facts determined in the judgment. . . . When other facts or conditions intervene, forming a new basis for a claim, the issues are no longer the same and res judicata does not apply.

*Clark v. Yosemite Community College Dist.,* 785 F.2d 781, 789 (9th Cir. 1986) (citations omitted).

The "prerequisite elements" to apply the res judicata doctrine to an entire cause of action or one or more issues are: "(1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a

party or in privity with a party to the prior proceeding." *People v. Barragan*, 32 Cal.4th 236, 253,   9 Cal.Rptr.3d 76 (2004) (quoting *Brinton v. Bankers Pension Services, Inc.*, 76 Cal.App.4th 550, 556, 90 Cal.Rptr.2d 469 (1999)).

### Collateral Estoppel

Collateral estoppel or issue preclusion "prevents relitigation of issues actually litigated and necessarily decided, after a full and fair opportunity for litigation, in a prior proceeding." *Shaw v. Hahn*, 56 F.3d 1128, 1131 (1995), *cert. denied*, 516 U.S. 964, 116 S.Ct. 418 (1995). Collateral estoppel "bars relitigation of determinations necessary to the ultimate outcome of a prior proceeding." *Bobby v. Bies*, 556 U.S. 825, 829, 129 S.Ct. 2145 (2009).   The "party against whom estoppel is asserted has litigated and lost in an earlier action." *Parklane Hosiery*, 439 U.S. at 329, 99 S.Ct. 645.

"Issue preclusion . . . forecloses litigation only of those issues of fact or law that were actually litigated and necessarily decided by a valid and final judgment between the parties, whether on the same or a different claim." *Segal v. American Tel. and Tel. Co., Inc.*, 606 F.2d 842, 845 (9th Cir. 1979).  "Issue preclusion bars the relitigation of issues actually adjudicated in previous litigation between the same parties." *Littlejohn v. U.S.*, 321 F.3d 915, 923 (9th Cir.), *cert. denied*, 540 U.S. 985, 124 S.Ct. 486 (2003).  "The issue must have been 'actually decided' after a 'full and fair opportunity' for litigation." *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988).

A "'federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered' under the Constitution's Full Faith and Credit Clause and under 28 U.S.C. § 1738." *Holcombe v. Hosmer*, 477 F.3d 1094, 1097 (9th Cir. 2007) (quoting *Migra v. Warren City School Dist. Bd. of Ed.*, 465 U.S. 75, 81, 104 S.Ct. 892 (1984)).  "A party's ability to relitigate an issue decided in a prior state court determination depends on the law of the state in which the earlier litigation occurred." *Kinslow v. Ratzlaff*, 158 F.3d 1104, 1105 (10th Cir. 1998); *see Holcombe*, 477 F.3d at 1097 ("the court applies Nevada law concerning claim preclusion to the Nevada judgment.")

The party asserting collateral estoppel bears the burden to prove the doctrine's requirements. *First N.B.S. Corp. v. Gabrielsen*, 179 Cal.App.3d 1189, 1194, 225 Cal.Rptr. 254, 256 (1989). Threshold requirements to apply collateral estoppel are:

1.      The issue to be precluded from relitigation **must be identical** to that decided in a former proceeding;

2.      The issue **must have been actually litigated** in the former proceeding;

3.      The issue **must have been necessarily decided** in the former proceeding;

4.      The decision in the former proceeding **must be final and on the merits**; and

5.      The party against whom preclusion is sought must be the **same as, or in privity with**, the party to the former proceeding.

*Lucido v. Superior Court*, 51 Cal.3d 335, 341, 272 Cal.Rptr.2d 767, 769 (1990).

The Department champions satisfaction of the res judicata and collateral estoppel elements. Plaintiffs challenge the Department's satisfaction of the elements.

### *Identical Claims/Issues*

"The application of the doctrine of collateral estoppel depends on whether the issue in both actions is the same, not whether the issue arises in the same context." *First N.B.S. Corp. v. Gabrielsen*, 179 Cal.App.3d 1189, 1195-1196, 225 Cal.Rptr. 254, 257 (1990) (italics in original). "[O]nly issues actually litigated in the initial action may be precluded from the second proceeding under the collateral estoppel doctrine. . . . An issue is actually litigated '[w]hen [it] is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined.'" *Gottlieb v. Kest*, 141 Cal.App.4th 110, 148, 46 Cal.Rptr.3d 7 (2006) (citations omitted). Nonetheless, "[i]f anything is left to conjecture as to what was necessarily involved and decided there can be no collateral estoppel . . . . [I]t must appear . . . that the precise question was raised and determined in the former suit." *Shopoff & Cavallo LLP v. Hyon,* 167 Cal.App.4th 1489, 1520, 85 Cal.Rptr.3d 268 (2008).

"[C]ollateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case." *Allen v. McCurry*, 449 U.S. 90, 95, 101 S.Ct. 411 (1980). The "requirement of determining

whether the party against whom an estoppel is asserted had a full and fair opportunity to litigate is a most significant safeguard." *Blonder-Tongue Laboratories, Inc. v. Univ. of Illinois*, 402 U.S. 313, 329, 91 S.Ct. 1434 (1979).

The Department argues an identity of issues in that the operative petition for writ of mandate ("petition") in *Parkside* alleges that the Department's mandate to SNFs "to include the advisory at the top of arbitration agreements and to preclude the ability to utilize binding arbitration for violation of the Resident's Bill of Rights is preempted by the FAA and is therefore void and invalid." The petition seeks declaratory relief that "any arbitration agreement or clause entered into by any facility subject to the SAA and implementing regulations shall not be found invalid on the basis that it fails to include the language in title 22, California Code of Regulations, section 72516(d) and 73518(d), regardless of the form in which the arbitration agreement or clause is presented." The Department concludes that both this action and *Parkside* challenge the "waiver language" in the challenged arbitration laws and seek the same relief.

Plaintiffs point to a difference of issues in this action and *Parkside* in that *Parkside* challenged infringement of SNFs' right to be free from format restrictions on arbitration agreements through adoption and enforcement of SAA I whereas this action contests the challenged arbitration laws' blanket prohibition of arbitration of section 1430(b) claims, triggered by amendments to California Health & Safety Code sections 72516 and 73518. Plaintiffs argue that there is no preclusion to their challenge to section 72516(d), which was re-adopted after *Parkside* based on legal precedent arising after *Parkside.*

Although there may be limited overlap or commonality of issues in this action and *Parkside*, the issues are not identical or so similar to constitute relitigation of the same issues. Plaintiffs' claims here address a complete bar of arbitration of claims arising under the Patient's Bill of Rights whereas *Parkside*, to the extent it involved arbitration, resolved chiefly SSA I formatting. Since *Parkside,* the Standard Admission Agreement and related arbitration issues have evolved to a degree not precisely in existence or at issue during *Parkside.* "Collateral estoppel does not apply where there are changed conditions or new facts which did not exist at

the time of the prior judgment, or where the previous decision was based on different substantive law." *United States Golf Assn. v. Arroyo Software Corp.,* 69 Cal.App.4th 607, 616, 81 Cal.Rptr.2d 708 (1999).  The Department fails to demonstrate that this action burdens it with relitigation of issues addressed in *Parkside* given the evolvement of precedent favoring arbitration, a matter squarely at issue here but not in *Parkside*.  *See Mortensen*, 722 F.3d at 1160 (*Concepcion* crystalized the directive, touched on in *Volt*, 489 U.S. at 474, 109 S.Ct. 1248, that the FAA's purpose is to give preference (instead of mere equality) to arbitration provisions. . . . *Concepcion* outlaws discrimination in state policy that is unfavorable to arbitration by further limiting the savings clause. We are bound by our duty to apply *Concepcion* and do so here").  The Department fails to satisfy the identical issues element.

### Final Decision

The Department argues that the *Parkside* court's August 10, 2006 order and March 21, 2007 writ of mandate resolved *Parkside* by a final judgment which is binding on plaintiffs in this action for res judicata/collateral estoppel.

To be a final, a determination need not be a final judgment but "sufficiently firm to be accorded conclusive effect."  *Luben Industries, Inc. v. United States*, 707 F.2d 1037, 1040 (9th Cir. 1983).

The Department points to no final decision in *Parkside* which is controlling on this action.  Neither the August 10, 2006 order nor March 21, 2007 writ of mandate addressed section 1430(b)'s bar of arbitration of Patient's Bill of Rights claims and the evolvement of precedent favoring arbitration.  In fact, the writ of mandate is silent on arbitration.  Absence of a final decision precludes application of res judicata or collateral estoppel.

### Same Parties Or Privity

In *Clemmer v. Hartford Ins. Co.*, 22 Cal.3d 865, 875, 151 Cal.Rptr. 285 (1978), the California Supreme Court examined the due process implications of collateral estoppel:

> In the context of collateral estoppel, due process requires that the party to be estopped must have had an identity or community of interest with, an adequate representation by, the losing party in the first action as well as the circumstances must have been such that the party to be estopped should reasonably have expected to be bound by the prior adjudication.  Thus, in deciding whether to apply collateral estoppel,

1  the court must balance the rights of the party to be estopped against the need for
2  applying collateral estoppel in the particular case, in order to promote judicial economy
3  by minimizing repetitive litigation, to prevent inconsistent judgments which undermine
   the integrity of the judicial system, or to protect against vexatious litigation.

4  *Clemmer*, 22 Cal.3d at 875, 151 Cal.Rptr. 285 (citations omitted).

5       To address privity, "courts examine the practicalities of the situation and attempt to

6  determine whether plaintiffs are 'sufficiently close to the original case to afford application of

7  the principle of preclusion.'"  *Armstrong v. Armstrong*, 15 Cal.3d 942, 951, 126 Cal.Rptr. 805

8  (1976) (quoting *People ex rel. State of Cal. v. Drinkhouse*, 4 Cal.App.3d 931, 937, 84 Cal.Rptr.

9  773 (1970)).  Privity exists when the person involved is "so identified in interest with another

10 that he represents the same legal right." *Zaragosa v. Craven*, 33 Cal.2d 315, 318, 202 P.2d 73

11 (1949).

12      Nonetheless, "collateral estoppel may be applied only if the requirements of due

13 process are met." *Lynch v. Glass*, 44 Cal.App.3d 943, 948, 119 Cal.Rptr. 139 (1975).  "Due

14 process requires that the nonparty have had an identity or community of interest with, and

15 adequate representation by, the losing party in the first action." *Lynch*, 44 Cal.App.3d at 948,

16 119 Cal.Rptr. 139.  "The circumstances must also have been such that the nonparty should

17 reasonably have expected to be bound by the prior adjudication." *Lynch*, 44 Cal.App.3d at

18 948, 119 Cal.Rptr. 139.  "A nonparty should reasonably be expected to be bound if he had in

19 reality contested the prior action even if he did not make a formal appearance. Thus, collateral

20 estoppel has been applied against nonparties who had a proprietary or financial interest in and

21 control of, a prior action." *Lynch*, 44 Cal.App.3d at 949, 119 Cal.Rptr. 139.  Collateral

22 estoppel further applies when the nonparty has such an interest "in the determination of a

23 question of fact or law with reference to the same subject matter or transaction." *Stafford v.

24 Russell*, 117 Cal.App.2d 319, 320, 255 P.2d 872 (1953), *cert. denied*, 346 U.S. 926, 74 S.Ct.

25 315 (1954).

26      The Department notes that CAHF as a *Parkside* party is bound by the *Parkside*

27 judgment.  The Department contends that although not parties to *Parkside,* the licensee

28 plaintiffs are in privity with the *Parkside* plaintiffs to subject the licensee plaintiffs to collateral

estoppel.  "Even when the parties are not identical, privity may exist if there is 'substantial identity' between parties, that is, when there is sufficient commonality of interest."  *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency,* 322 F.3d 1064, 1081 (9th Cir. 2003) (internal quotation and citation omitted).  "One of the relationships that has been deemed 'sufficiently close' to justify a finding of privity is that of an organization or unincorporated association filing suit on behalf of its members." *Tahoe-Sierra Preservation*, 322 F.3d at 1082.  "Of course, the organization must adequately represent the interests of its individual members if its representation is to satisfy . . . due process concerns . . ." *Tahoe-Sierra Preservation*, 322 F.3d at 1082.  "However, if there is no conflict between the organization and its members, and if the organization provides adequate representation on its members' behalf, individual members not named in a lawsuit may be bound by the judgment won or lost by their organization." *Tahoe-Sierra Preservation*, 322 F.3d at 1082.  The Department concludes that CAHF in *Parkside* sufficiently represented its members interests, including the licensee plaintiffs, to bind the licensee plaintiffs to the *Parkside* results in that CAHF members "received full and fair consideration and representation by CAHF."

Plaintiffs challenge the commonality of parties in that neither Lifehouse nor CF Modesto existed during *Parkside* and Avalon was not a CAHF member during *Parkside*. Plaintiffs note the absence of the licensee plaintiffs' proprietary or financial interest or control of *Parkside*.  Plaintiffs continue that CAHF membership does not create sufficient privity to bind the licensee plaintiffs, three of which were not CAHF members during *Parkside*.

Plaintiffs demonstrate that at least three licensee plaintiffs lacked sufficient privity with CAHF during *Parkside*.  Moreover, the difference of issues in this action and *Parkside* raises due process concerns to erode the Department's satisfaction of the same party/privity element. The Department fails to demonstrate that the circumstances surrounding *Parkside* created a reasonable expectation in plaintiffs that they would be bound by *Parkside* for the purposes of this action addressing different issues.

## **Abstention**

As an alternative to proceeding on a finding that plaintiffs invoke this Court's

jurisdiction, the Department urges this Court to abstain in favor of plaintiffs' use of state court proceedings and on grounds that "the matter is not constitutionally or prudentially ripe."

"Although a federal equity court does have jurisdiction of a particular proceeding, it may, in its sound discretion, . . . refuse to enforce or protect legal rights, the exercise of which may be prejudicial to the public interest; for it is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy." *Burford v. Sun Oil Co.,* 319 U.S. 315, 317-318, 63 S.Ct. 1098 (1943) (internal quotations and citations omitted). *Burford* abstention allows a federal district court to abstain from exercising jurisdiction if the case presents "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," or if decisions in a federal forum "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 814, 96 S.Ct. 1236 (9th Cir. 2002).

The Department argues that adequate state court remedies are available to plaintiffs and which include a writ should plaintiffs identify a specific agreement in dispute and administrative remedies and legal action to contest a Department citation, penalties or licensing issues.  The Department notes that if a concrete dispute over arbitration arises with an SNF resident, plaintiffs may invoke 9 U.S.C. § 4 to compel arbitration.

Plaintiffs challenge the Department's satisfaction of *Burford* abstention in the absence of evidence that:

1.      California has concentrated suits challenging the Department's action to particular court;

2.      Federal issues cannot be separated easily from complex California issues with which California courts might have special competence; and

3.      Federal review may disrupt California efforts to establish coherent policy. *See U.S. v. Morros*, 268 F.3d 695, 705 (9th Cir. 2001) ("*Burford* allows courts to decline to rule on an essentially local issue arising out of a complicated state regulatory scheme").

The Department demonstrates no grounds to abstain on plaintiffs' requested declaratory and injunctive relief.  Plaintiffs have established a legitimate controversy among the parties worthy of resolution.  "District courts have an obligation and a duty to decide cases properly before them, and '[a]bstention from the exercise of federal jurisdiction is the exception, not the rule.'"  *City of Tucson v. U.S. West Communications, Inc.*, 284 F.3d 1128, 1132 (9th Cir. 2002) (quoting *Colorado River*, 424 U.S. at 813, 96 S.Ct. 1236)).  No prejudice to the public interest appears to support abstention.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1.      GRANTS plaintiffs summary judgment, DECLARES the challenged arbitration laws invalid, unlawful and preempted by the FAA to the extent they bar arbitration of Patient's Bill of Rights claims, and ENJOINS the Department to enforce the challenged arbitration laws to the extent they bar arbitration of Patient's Bill of Rights claims;

2.      ENTERS this JUDGMENT in favor of plaintiffs and against defendants California Department of Public Health and its director Ronald Chapman, M.D.; and

3.      DIRECTS the clerk to close this action.

This JUDGMENT is subject to F.R.App.4(a)'s time limitations to file an appeal of this JUDGMENT.

IT IS SO ORDERED.

Dated:   __January 15, 2014__          ___/s/ Lawrence J. O'Neill___
                                                    UNITED STATES DISTRICT JUDGE

37